614 So.2d 539 (1993)
Patrick M. DUFFY, M.D., and Physicians Protective Trust Fund, Appellants,
v.
Betty BROOKER, as Personal Representative of the Estate of Ronald Brooker, Deceased, Appellee.
Nos. 91-3847, 91-3877.
District Court of Appeal of Florida, First District.
January 21, 1993.
*540 Gary A. Shipman and Richard B. Collins, of Collins, Dennis & Truett, Tallahassee, and Bambi G. Blum and Mark Hicks, of Hicks, Anderson & Blum, P.A., Miami, for appellants.
Samuel Hankin and Phil C. Beverly, Jr., of Hankin & Beverly, P.A., Gainesville, for appellee.
Peter S. Branning, P.A. and Susan J. Silverman, Sarasota, for Amicus Curiae, Academy of Florida Trial Lawyers.
BARFIELD, Judge.
Dr. Duffy and his medical malpractice insurer appeal a final order imposing sanctions upon the insurer under section 766.206, Florida Statutes (1989). We affirm.
In August 1990, pursuant to section 766.106, Mrs. Brooker filed a notice of intent to initiate malpractice litigation against Dr. Duffy for the death of her husband. Pursuant to section 766.203(2), the notice was accompanied by the four page affidavit of Dr. Stahl, a board certified gastroenterologist and internist, which stated that, within a reasonable degree of medical probability, there are reasonable grounds to believe that Dr. Duffy was negligent in the care or treatment of Brooker and that such negligence resulted in injury to him. The affidavit outlined the documents Dr. Stahl reviewed and the grounds for the claim of negligent injury. Dr. Stahl concluded that, in not considering an alternate diagnosis and pursuing the appropriate studies, Dr. Duffy fell below acceptable medical standards of care.
In December 1990, Daniel Stephens, a claims adjustor for Physicians Protective Trust Fund (PPTF), Duffy's insurer, responded with a letter which stated:
After a thorough review of this matter, we find no basis to support a claim of negligent injury against Dr. Patrick Duffy. Thereby your client's claim is hereby denied. Enclosed is a copy of the required corroborating affidavit to support our position.
Attached was the following unnotarized statement of Dr. Edgerton:
I hereby state the following:
1. That I am a medical expert as defined by Florida Statute 766.202(5);
2. That my medical opinion based upon review of the claim made by RONALD BROOKER, DECEASED, against PATRICK A. DUFFY, M.D. corroborates reasonable grounds for lack of negligent injury pursuant to Florida Statute 766.203(3);
3. That I have not rendered any previous medical opinion which has been disqualified pursuant to Florida Statute 766.203(4);
I HEREBY CERTIFY THAT THE ABOVE STATEMENTS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND ABILITY.
Mrs. Brooker filed her complaint against Dr. Duffy in February 1991. Thereafter, she filed a "Motion Requesting Determination as to Whether Defendant's Denial of Claim Rests on a Reasonable Basis Pursuant to § 766.206(1), F.S." Dr. Duffy's attorney filed a response to the motion, attaching a notarized sworn statement from Edgerton similar to the first, except with this added paragraph:
4. That I have previously rendered said medical opinion on December 11, 1990, and that said expert opinion was inadvertently not sworn and attested to. My opinions have not deviated or changed any from the opinion rendered on December 11, 1990.
At the hearing on the motion, the trial judge instructed the parties that there were two issues (whether Edgerton's statement *541 complied with section 766.203(3), and whether a reasonable investigation was made by the insurance company and/or by Edgerton) and that Brooker had the burden of making out a prima facie case under the statute, at which time the burden of going forward would shift to the defendant. The only witness on the merits was Catherine Burney, the present adjustor (Stephens had left PPTF six months before).
Burney testified that she had not participated in the presuit screening. The file indicated that the case was turned over to PPTF on September 10, 1990, and that they acknowledged by letter on September 14, 1990. Burney testified that the first medical review would have been performed by Stephens, who is a registered nurse, and that the records were also sent to Dr. Edgerton, a board certified gastroenterologist.
The file indicated that Stephens asked for an extension of the statutory 90-day period in order to forward additional records sent to PPTF on November 15, 1990. Burney testified that PPTF sent Brooker's attorneys a copy of the medical records on September 27, 1990, some of which were illegible. Stephens wrote on October 4, 1990, that he was a victim of the hospital as to the quality of the records. On November 15, 1990, Brooker's attorneys forwarded legible copies of the records. Burney testified that she did not know when Dr. Edgerton first looked at the records, and that PPTF's attorney was involved only to the extent that he appeared at an unsworn statement.[1]
On cross-examination, Burney identified Dr. Edgerton's February 1991 sworn statement. She testified that she has twelve years experience reviewing medical malpractice claims and that in her opinion there was a good-faith review done on this claim, and a good-faith determination by PPTF that there was no negligence on the part of Dr. Duffy. On redirect examination, Burney again admitted that she had had no on-hand involvement with the review of the claim.
Defense counsel moved for a directed judgment on the motion, citing Damus v. Parvez, 556 So.2d 1136 (Fla. 3d DCA 1989), for the proposition that the verified corroborating statement was timely produced before the hearing. The trial judge asked defense counsel, assuming that the verification requirement had been met, how they had complied with the requirement of "reasonable grounds for lack of negligent injury." He expressed concern that Dr. Edgerton's statement contained no grounds for his conclusion, noting "to me, corroborate means provide some factual basis for the conclusion that's reached."
Claimant's counsel cited Dressler v. Boca Raton Community Hospital, 566 So.2d 571 (Fla. 4th DCA 1990), rev. den., 581 So.2d 164 (Fla. 1991), arguing that PPTF's response did not indicate what kind of doctor Edgerton was, what he had reviewed, or "what aspect of our alleged negligence he was refuting." He also cited Farmers Insurance Exchange v. Colton, 264 Or. 210, 504 P.2d 1041 (1972), defining "corroboration" as "something which leads an impartial and reasonable mind to believe that material testimony is true, testimony of some substantial fact or circumstances independent of a statement of a witness." The trial judge observed: "It's a simple question of what did the legislature intend when they adopted this statute."
Burney was recalled to testify that as the supervisor, it is her duty to determine whether a reasonable investigation has been completed, and that she determined that "a good-faith investigation was conducted on behalf of Dr. Duffy in this case." She testified that Dr. Edgerton was a board certified gastroenterologist and internist, a health care provider similar to Dr. Duffy, and that Dr. Edgerton's corroboration statement is "very standard" in the industry and is a standard form used by PPTF. She described the usual "claims review and consultation session" between the claims adjustor and the expert reviewer, "during which the entire medical record *542 is discussed and further discussion is centered around the allegations put forth by the attorney representing the patient or patient's estate," and testified that such a meeting had been conducted in this case and that the investigation "was handled as all investigations are handled throughout the state."
On cross-examination, Burney testified that PPTF prepares the form "corroboration" statement and that the reviewing physician completes it. She stated that the claims review and consultation session in this case was held on December 11, 1990, and that the delay in the claims review process was caused by the illegible copies of the hospital records. She did not know how long Dr. Edgerton had spent reviewing the records.
The trial judge issued a twelve page order granting Brooker's motion, striking PPTF's response, and holding PPTF "personally responsible to plaintiff" for reasonable attorney fees and costs incurred during the investigation and evaluation of the claim. Having outlined the statutory framework and the relevant facts, the judge observed that certain propositions were clear from the "presuit investigation" provisions of chapter 766.
He found that the presuit investigation provisions are an integral part of "a plan for prompt resolution of medical negligence claims" designed to "facilitate amicable resolution" of such claims. He found that the provisions apply to all medical negligence claims and defenses, and were intended to facilitate "early determination of the merit of claims" and to allow the parties to "verify" that a "reasonable investigation" has preceded the making of both claims and defenses in medical negligence actions. He found that any party may request that the court determine whether an opposing party's claim or denial "rests on a reasonable basis," and that if the court finds that the response rejecting the claim "is not in compliance with the reasonable investigation requirements," it must impose the sanctions set out in section 766.206(3).
He observed that under section 766.206 the burden of persuasion and the initial burden of going forward rest on the moving party and that the burden of persuasion never shifts, but that once the moving party presents a prima facie case that the opposing party's claim or denial does not rest "on a reasonable basis," the burden of going forward shifts to the opposing party to present evidence that it complied with the "reasonable investigation" requirements and that its claim or denial does rest "on a reasonable basis." He found that Brooker had presented a prima facie case to establish that PPTF's response rejecting the claim was not in compliance with the "reasonable investigation" requirements of the statute and did not rest on a reasonable basis, noting:
There is no factual information of any nature whatsoever in either the letter of December 13, 1990, from Stephens to plaintiff's attorney or the "CORROBORATION OF MEDICAL EXPERT OPINION" signed by Dr. Edgerton by which one might "verify" that a "reasonable investigation" had preceded denial by Physicians of the claim. In particular, the Court notes that, in its opinion, Dr. Edgerton's statement consists of nothing more than a series of legal conclusions. It identifies neither the medical records which Dr. Edgerton reviewed nor the factual bases upon which his ultimate legal conclusion rests. It does not set forth Dr. Edgerton's professional qualifications, so that one might attempt to "verify" whether Dr. Edgerton qualifies as a "medical expert," as that term is defined in Section 766.202(5). In fact, it does not even indicate where Dr. Edgerton practices. Moreover, because of these deficiencies, it is impossible to determine intelligently whether or not Dr. Edgerton made a "reasonable investigation" (or, for that matter, whether he made any investigation). See § 766.206(5)(a), Fla. Stat. (1989).
He did not consider significant the question of whether the medical opinion had originally been notarized.
He found that in response to the claimant's case, PPTF had presented only Burney, *543 who testified that she had not participated in any of the presuit investigation. He found:
Other than the obviously biased (in the legal sense) conclusory testimony that Physicians performed "a good-faith review" and that the determination that Dr. Duffy had not been negligent had, likewise, been made "in good faith," Burney was unable to offer any specific insight into the nature of the "investigations" (if any) performed by either Stephens or Dr. Edgerton.
He concluded that the greater weight of the evidence established that PPTF's response rejecting the claim was not in compliance with the "reasonable investigation" requirements of the statute and did not rest "on a reasonable basis," noting:
The Court is convinced that a contrary conclusion would fly in the face of the clearly expressed legislative intent behind the "presuit investigation" requirements  i.e., to permit early evaluation of the merit of claims and defenses and, thereby, to encourage meaningful presuit negotiations. See generally Dressler v. Boca Raton Community Hospital, 566 So.2d 571 (Fla. 4th DCA 1990).
We affirm the trial court's order, but we consider that this case merits discussion. Some of the pertinent provisions of chapter 766 are ambiguous and confusing, but read in pari materia, they constitute a plan for prompt resolution of medical negligence claims which requires the parties to provide each other with adequate information to evaluate the claims and defenses, and which encourages meaningful presuit settlement negotiations. None of the cases cited by the parties are on point, but they do give some indication of the legislative intent behind the statutory scheme for presuit investigation and evaluation of medical malpractice claims.
Section 766.104(1) provides that no medical negligence action shall be filed "unless the attorney filing the action has made a reasonable investigation as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant." It also provides that "good faith" may be shown if the claimant or his counsel has received a written opinion of an expert "that there appears to be evidence of medical negligence." Attorney fees and costs are awardable against the claimant's counsel if the court finds that the attorney did not act in good faith and "that no justiciable issue was presented against a health care provider that fully cooperated in providing informal discovery." Section 766.104(2) provides for a 90-day extension of the statute of limitations "to allow the reasonable investigation required by subsection (1)."
Section 766.106(2) requires the claimant, after completing the presuit investigation pursuant to section 766.203 and prior to filing a claim for medical malpractice, to notify each prospective defendant "of intent to initiate litigation for medical malpractice." Section 766.106(3)(a) provides that no suit may be filed for a period of 90 days after the notice is mailed, and requires the insurer to "conduct a review to determine the liability of the defendant" during that period. It also provides that each insurer "shall have a procedure for the prompt investigation, review, and evaluation of claims during the 90-day period" and offers four alternative suggestions, including: 1) internal review by a "duly qualified claims adjustor"; 2) creation of a panel consisting of the adjustor, an attorney, and a medical expert; 3) a contractual agreement with a medical society which has a medical review committee; and 4) "any other similar procedure which fairly and promptly evaluates the pending claim."
Section 766.106(3)(b) provides:
At or before the end of the 90 days, the insurer or self-insurer shall provide the claimant with a response:
1. Rejecting the claim;
2. Making a settlement offer; or
3. Making an offer of admission of liability and for arbitration on the issue of damages. This offer may be made contingent upon a limit of general damages.
Section 766.106(3)(c) requires that the response be provided by certified mail, and provides that failure to reply to the notice *544 within the 90-day period "shall be deemed a final rejection of the claim for purposes of this section."
Section 766.203(2) requires the claimant to conduct an investigation prior to issuing the notice of intent to initiate litigation,
to ascertain that there are reasonable grounds to believe that:
(a) Any named defendant in the litigation was negligent in the care and treatment of the claimant; and
(b) Such negligence resulted in injury to the claimant.
Section 766.203(3) requires the defendant or the insurer to conduct an investigation prior to issuing its response,
to ascertain whether there are reasonable grounds to believe that:
(a) The defendant was negligent in the care or treatment of the claimant; and
(b) Such negligence resulted in injury to the claimant.
Section 766.202(4) defines "investigation" to mean "that an attorney has reviewed the case against each and every potential defendant and has consulted with a medical expert and has obtained a written opinion from said expert." The presuit investigations must be "verifiable," section 766.201(2)(a).
Section 766.203(2) also requires the claimant to provide "corroboration of reasonable grounds to initiate medical negligence litigation" by submission of "a verified written medical expert opinion" at the time the notice of intent to sue is mailed, "which statement shall corroborate reasonable grounds to support the claim of medical negligence."[2] Section 766.203(3) requires that "corroboration of lack of reasonable grounds for medical negligence litigation" be provided with any response rejecting the claim, by submission of "a verified written medical expert opinion" at the time the response is mailed, "which statement shall corroborate reasonable grounds for lack of negligent injury sufficient to support the response denying negligent injury."[3]
Sections 766.106(5)-766.106(9) and 766.204-766.205 provide for informal presuit discovery and require each party to provide the other with "reasonable access to information within its possession or control in order to facilitate evaluation of the claim."
Section 766.206(1) provides that after completion of presuit investigation and any informal discovery, "any party may file a motion in the circuit court requesting the court to determine whether the opposing party's claim or denial rests on a reasonable basis."
Section 766.206(3) provides that if the court finds "that the response mailed by the defendant rejecting the claim is not in compliance with the reasonable investigation requirements," it "shall strike the defendant's response, and the person who mailed such response, whether the defendant, the defendant's insurer, or the defendant's attorney, shall be personally liable for all attorney's fees and costs incurred during the investigation and evaluation of the claim, including the reasonable attorney's fees and costs of the claimant." Section 766.206(2) is a similar provision aimed at the claimant's compliance with the reasonable investigation requirements.
When one of the parties files a motion under section 766.206, the trial court must determine whether the opposing party's claim or denial "rests on a reasonable basis" and whether the notice of intent to sue *545 or the response rejecting the claim is "in compliance with the reasonable investigation requirements of ss. 766.201-766.212." If the greater weight of the evidence establishes that the non-moving party did not conduct a "reasonable investigation" and that its notice of intent to sue or response rejecting the claim does not "rest on a reasonable basis," the motion will be granted.
In making this determination, the court may consider any relevant evidence, including the inferences to be drawn from the text of the notice of intent to sue or response and its corroborating medical expert opinion. However, the failure to provide an adequate verified written medical expert opinion is not dispositive. If the greater weight of the evidence establishes that the non-moving party did conduct a "reasonable investigation" and that its notice of intent to sue or response rejecting the claim "rests on a reasonable basis," the motion will be denied.
Section 766.206(5)(a) provides that if the court finds "that the corroborating written medical expert opinion attached to any notice of claim or intent or to any response rejecting a claim lacked reasonable investigation," it shall report the medical expert to the Division of Medical Quality Assurance or its designee. Section 766.206(4) provides for discipline of an attorney acting without reasonable investigation.
We find that the trial judge's rulings regarding the burden of persuasion and the burden of going forward under section 766.206 were correct. We agree that the defendant's response, including Dr. Edgerton's statement, constituted prima facie evidence of lack of a "reasonable basis" for the denial of the claim which was sufficient to shift the burden to the defendant to show compliance with the "reasonable investigation" requirements and that the denial of the claim did rest on a reasonable basis. Having carefully reviewed the record in this case, we find that competent, substantial evidence supports the trial judge's finding that the greater weight of the evidence established that PPTF's response rejecting the claim was not in compliance with the "reasonable investigation" requirements of the statute and did not rest "on a reasonable basis."
The Academy of Florida Trial Lawyers, appearing as amicus curiae in this case on the side of appellee, argue that "corroborate" has a plain, ordinary, and obvious meaning, citing The American Heritage Desk Dictionary (1981) and Black's Law Dictionary, Fifth Edition (1979). It contends that section 766.203(3) requires that the medical expert's "corroborating" statement contain "additional or supplemental information which strengthens the conclusions offered by the medical expert." It asserts that Dr. Edgerton's statement did not comply with the requirements of section 766.203(3) because it contained no additional facts or circumstances to confirm his "conclusory allegations."
We agree that the Florida Legislature contemplated the type of "corroboration" urged by the Academy when it attempted to reform the Medical Malpractice Act, and not merely a reiteration of the statement to be corroborated. In order to comply with the spirit and intent of the statute, to promote "fruitful negotiation" as noted in Dressler, the notice of intent to initiate litigation and the corroborating medical expert opinion, taken together, must sufficiently indicate the manner in which the defendant doctor allegedly deviated from the standard of care, and must provide adequate information for the defendants to evaluate the merits of the claim. Since the statutory provisions are reciprocal, the response and the corroborating medical expert opinion, taken together, must sufficiently indicate that the defendant doctor did not deviate from the standard of care, or that the defendant doctor was not liable for the claimant's injury, or that the claimant suffered no injury.
At oral argument, Brooker's counsel argued that section 766.203(3) requires the corroborating statement to affirm that the medical expert has reviewed the medical records and has concluded that the defendant doctor did not practice below the medical standard of care, or that the defendant doctor did not cause the claimant's injury. *546 Later, he conceded that the specific language of section 766.203 requires only that the verified written corroborating statement attest that there exist reasonable grounds to believe that the defendant doctor was not negligent. We interpret sections 766.203(2) and 766.203(3) to require that the "corroboration" statements outline the factual basis for the medical experts' opinions, in keeping with the legislative purpose to permit early evaluation of the merit of claims and defenses and thereby encourage meaningful presuit negotiations.
Dr. Edgerton's statement clearly did not satisfy the requirements of section 766.203(3), and did not indicate that a reasonable investigation had been conducted prior to issuance of the response denying the claim. While section 766.206(3) provides sanctions for failure to conduct a reasonable investigation prior to filing the response, we find no statutory sanction for providing an inadequate corroboration, or no corroboration, with the response rejecting the claim, and no statutory sanction for failing to reply at all to the notice of intent to initiate litigation, notwithstanding that all such failures to comply with the statutory scheme are plainly at cross-purposes to the spirit and intent of the legislature in enacting the medical malpractice reforms. We make this observation considering that the Florida Legislature may wish to provide such sanctions as an incentive to the parties to comply with its "plan for prompt resolution of medical negligence claims." Section 766.201(2), Florida Statutes (1989).
When the claimant resorted to the procedure outlined in section 766.206 to have the trial court determine whether, in fact, a reasonable investigation had been made, the insurer's cryptic response and form "corroboration" statement satisfied the claimant's burden of going forward. Dr. Duffy and his insurer failed to present sufficient competent evidence to outweigh the claimant's prima facie showing that they had not conducted a reasonable investigation and that their denial of the claim did not rest on a reasonable basis.
The trial court's order is AFFIRMED.
MINER, J., concurs.
BOOTH, J., specially concurs with opinion.
BOOTH, Judge, specially concurring.
I concur in the result of this opinion.
NOTES
[1] Under section 766.106(7), either party may take the unsworn statement of the other for the purpose of presuit screening only. PPTF asserts in its brief that Dr. Duffy's unsworn statement was taken.
[2] The claimant's failure to produce the corroborating medical expert opinion prior to the running of the statute of limitations will not result in dismissal of the complaint as a matter of law, but it may subject the plaintiff to sanctions under section 766.106(6) and/or section 766.206(2). Stebilla v. Mussallem, 595 So.2d 136 (Fla. 5th DCA), rev. den., Mussallem v. Stebilla, 604 So.2d 487 (Fla. 1992).
[3] If no written response rejecting the claim is sent within the 90-day period, the claim is deemed rejected by operation of section 766.106(3)(c). If no written response rejecting the claim is sent, the "corroboration" requirement of section 766.203(3) is not activated. However, this does not excuse the requirement that the defendant conduct a "reasonable investigation" and determine in good faith whether to reject the claim, failure of which may subject the defendant to sanctions under section 766.206(3) and/or section 766.106(6). Stebilla; Damus v. Parvez, 556 So.2d 1136 (Fla. 3d DCA 1989).