619 So.2d 1050 (1993)
Lisa N. WOLFSEN, As Personal Representative of the Estate of Julia Wolfsen, Deceased, Appellant,
v.
Clarence W. APPLEGATE, M.D., R. James Mabry, M.D., J. Brian Sheedy, M.D., and Hematology/Oncology Associates, Appellees.
No. 92-996.
District Court of Appeal of Florida, First District.
June 18, 1993.
William J. Vosper, Jr. of Vosper & Maizys, Stillwater, NJ, Jean Anne Kneale of Hicks, Anderson & Blum, P.A., Miami, for appellant.
Thomas J. Guilday and Pamela K. Frazier of Huey, Guilday, Kuersteiner & Tucker, P.A., Tallahassee, for appellee Applegate.
S. William Fuller, Michael W. Kehoe and Cynthia D. Simmons of Fuller, Johnson & Farrell, P.A., Tallahassee, Robert C. Downie, II of Oertel, Hoffman, Fernandez & Cole, for appellees Mabry, Sheedy, and Hematology/Oncology Associates.
*1051 WEBSTER, Judge.
Appellant, as personal representative of the estate of Julia Wolfsen, seeks review of an order dismissing medical negligence claims made against appellees, for noncompliance with the "reasonable investigation requirements" of sections 766.201-.206, Florida Statutes (1989). We conclude that the trial court erroneously determined that medical expert affidavits failed to "corroborate reasonable grounds to support the claim[s]," and misconstrued the applicable statutory provisions. Accordingly, we reverse.
In February 1991, pursuant to section 766.106(2), Florida Statutes (1989), Wolfsen's attorney notified Dr. Edwin D. Crane, III (who had been Wolfsen's gynecologist), Dr. R. James Mabry, Jr. (who had been Wolfsen's hematologist), and Dr. Clarence Applegate (who had been Wolfsen's nephrologist) that Wolfsen intended to commence litigation against each of them for medical malpractice. Enclosed with each letter were the affidavits of two physicians, Drs. Stanley Goldfarb (a board-certified nephrologist) and Richard Stein (a board-certified hematologist).
After reciting that he had reviewed Wolfsen's medical records relating to her care and treatment by Drs. Crane, Mabry and Applegate, Dr. Goldfarb's affidavit states:
I am of the opinion, based upon what I have reviewed thus far, that Dr. E.D. Crane III, fell below prevailing standards of care when he negligently prescribed the drug Anaprox, to a patient [Wolfsen] with renal disease, which has caused severe deterioration of her kidney function. I am also of the opinion that if Drs. Mabry and Appelgate [sic] were working as a team with Dr. Crane, or if they were informed individually that Ms. Wolfsen was prescribed Anaprox, then they, in addition to Dr. Crane, deviated from acceptable medical standards of care.
It is a widely known fact for such a commonly used drug as Anaprox, that a gynecologist, hematologist and a nephrologist should be aware that it is contraindicated for a person with pre-existing renal problems.
Attached to Dr. Goldfarb's affidavit was his report to Wolfsen's attorney. In that report, Dr. Goldfarb stated that he understood that Wolfsen had had a history of thrombocytopenia (a decrease in the number of blood platelets) and reduced renal function. "She went off to college in Tallahassee and her medical problems became the responsibility of a team of physicians including ... Dr. Mabry, the hematologist, Dr. Applegate, the nephrologist, and Dr. Crane, the gynecologist. They concentrated on three medical problems, respectively: her platelet abnormalities, her renal disease, and her abnormal and severe vaginal bleeding." Dr. Goldfarb concluded his report with the following comment: "To the extent that the two internists, Dr. Applegate and Dr. Mabry[,] were part of a team caring for Ms. Wolfson [sic], they should have been aware of the use of Anaprox by Dr. Crane. If this was the case, then they in addition to Dr. Crane deviated from accepted medical practice in Ms. Wolfson's [sic] use of Anaprox."
The affidavit of Dr. Stein likewise recites that he had reviewed Wolfsen's medical records relating to her care and treatment by Drs. Crane, Mabry and Applegate. It then states:
I am of the opinion, based upon what I have reviewed thus far, that Dr. E.D. Crane III, fell below prevailing standards of care when he negligently prescribed the drug Anaprox to a patient [Wolfsen] with renal disease, which caused severe deterioration of her kidney function.
His report to Wolfsen's attorney was, likewise, attached to his affidavit. In that report, Dr. Stein stated that he "consider[ed] the care rendered by the hematologists to be excellent"; and that the care Wolfsen received from Dr. Applegate "appear[ed] totally reasonable."
The parties participated in informal presuit discovery, as contemplated by section 766.106, Florida Statutes (1989). Wolfsen, who by this time had experienced renal failure, testified under oath. During her examination, she repeatedly and adamantly stated that Drs. Mabry and Applegate had told her that they and Dr. Crane would *1052 keep each other informed regarding her conditions, and work together as a team. According to Wolfsen, while Dr. Crane never explicitly said that he and Drs. Mabry and Applegate would use a team approach to her treatment, he told her that he would keep Dr. Applegate informed. Specifically, Wolfsen testified that Dr. Crane told her on the day that he prescribed Anaprox that he would inform Dr. Applegate that he had done so. Wolfsen also testified that, shortly after Dr. Crane had prescribed Anaprox, she told Dr. Mabry about the prescription. She said that she never told Dr. Applegate about the Anaprox prescription because she assumed that Drs. Crane and Mabry had informed him.
In an unsworn statement, Dr. Crane said that he had prescribed Anaprox for Wolfsen only because he had performed an endometrial biopsy, which almost always causes uterine cramps. In his opinion, Anaprox in the amount he had prescribed should not have had any adverse effect upon Wolfsen. Dr. Crane denied any agreement or understanding to act as a member of a team with Drs. Mabry and Applegate; and any type of routine communication with either doctor regarding treatment of Wolfsen.
Likewise in an unsworn statement, Dr. Mabry said that he was never made aware that Wolfsen was taking Anaprox. Moreover, in his opinion, Wolfsen's "renal failure most probably [was] a natural consequence of the pathophysiology of her underlying renal disease." When asked whether he had ever told Wolfsen that he "would be in close contact with Dr. Crane and Dr. Applegate in regard to their treatment and the drugs that they were going to prescribe," Dr. Mabry responded that he did not "recall saying anything just like that." However, he did say that he "communicate[d] continuously and frequently" with Dr. Applegate regarding Wolfsen's conditions; and that he "regularly sent" Dr. Crane copies of his office progress notes and other relevant documents.
Also in an unsworn statement, Dr. Applegate said that he had not known that Wolfsen had been prescribed Anaprox until he had received the notice of intent to initiate litigation. He said that he had never told Wolfsen that he and Drs. Crane and Mabry would work together as a team regarding her case. He denied that he had ever had any communication of any type with Dr. Crane regarding Wolfsen. However, he and Dr. Mabry communicated regularly regarding Wolfsen; among other things, keeping each other informed as to drugs each was prescribing.
After the informal presuit discovery had been completed, all three doctors filed motions, pursuant to section 766.206(1), Florida Statutes (1989), requesting the trial court to determine whether Wolfsen's claims "rest[ed] on a reasonable basis." Shortly before the hearing, Wolfsen filed an additional affidavit of Dr. Goldfarb. In that affidavit, Dr. Goldfarb recited that he had investigated "the circumstances surrounding Julia Wolfsen's renal failure," and reviewed her medical records. He opined, "based upon a reasonable degree of medical probability, that Dr. Crane fell below the national standards of care in prescribing Anaprox and in failing to properly monitor [Wolfsen's] condition while on Anaprox." He was "also of the opinion[,] based upon a reasonable degree of medical probability[,] that Doctors Applegate and Mabry fell below the standard of care in failing to properly monitor the drugs Julia Wolfsen was prescribed, including Anaprox, and failing to properly monitor her renal condition," explaining the facts upon which he based his conclusions.
At the hearing held on the doctors' motions requesting the court to determine whether Wolfsen's claims "rest[ed] on a reasonable basis," counsel for the doctors argued that the only issue was whether the affidavits from Drs. Goldfarb and Stein were sufficient to "corroborate reasonable grounds to support the claim[s] of medical negligence," as contemplated by section 766.203(2), Florida Statutes (1989). The trial court accepted this argument, over Wolfsen's response that the critical question was whether a "reasonable investigation" had been conducted, as contemplated by sections 766.201-.206, and that the requirement of corroborating affidavits from medical *1053 experts was merely one part of the investigation. Accordingly, it found it unnecessary to consider evidence regarding the sufficiency of the presuit investigation. However, it did allow Wolfsen to proffer such evidence.
The trial court then concluded that neither Dr. Goldfarb nor Dr. Stein had stated unequivocally that Drs. Crane, Mabry and Applegate had been working as a team in providing care and treatment to Wolfsen. Therefore, it concluded, further, that the affidavits failed to "corroborate reasonable grounds to support the claim[s] of medical negligence" as to Drs. Mabry (and his associate, Dr. Sheedy, and their association, Hematology/Oncology Associates of Northwest Florida) and Dr. Applegate. Accordingly, it dismissed the claims against them. However, it concluded that the affidavits were sufficient to "corroborate reasonable grounds to support the claim of medical negligence" as to Dr. Crane. Therefore, it denied Dr. Crane's motion to dismiss. Appellant challenges the order to the extent that it dismissed the claims against Drs. Mabry, Sheedy and Applegate and against Hematology/Oncology Associates of Northwest Florida. Dr. Crane has not taken a cross appeal. Because we conclude that the trial court erred, we reverse.
We are unable to agree with the trial court's conclusion that the affidavits submitted by Wolfsen are insufficient to "corroborate reasonable grounds to support the claim[s] of negligence" against appellees. Certainly, Dr. Stein's affidavit contains nothing to suggest that any of the appellees had been negligent in their care or treatment of Wolfsen. In fact, his report (which was attached to his affidavit) can fairly be read as reflecting the opinion that none of the appellees was negligent. However, in our opinion, Dr. Goldfarb's affidavits are another matter.
The language in Dr. Goldfarb's initial affidavit which addresses the care and treatment provided by Drs. Mabry and Applegate is conditional: "[I]f Drs. Mabry and Appelgate [sic] were working as a team with Dr. Crane, or if they were informed individually that Ms. Wolfsen was prescribed Anaprox, then they, in addition to Dr. Crane, deviated from acceptable medical standards of care." However, this statement must be read in conjunction with his report, which was incorporated into the affidavit by reference. In his report, Dr. Goldfarb stated that he understood the facts to be that Wolfsen "went off to college in Tallahassee and her medical problems became the responsibility of a team of physicians including ... Dr. Mabry, the hematologist, Dr. Applegate, the nephrologist, and Dr. Crane, the gynecologist. They concentrated on three medical problems, respectively: her platelet abnormalities, her renal disease, and her abnormal and severe vaginal bleeding." Read together, we believe that Dr. Goldfarb's initial affidavit and his report stand for the proposition that, if the facts were as he understood them to be from his review of the records, then Drs. Mabry and Applegate had also been negligent. In our opinion, the affidavit and report, together, are sufficient to "corroborate reasonable grounds to support the claim[s] of medical negligence" against appellees.
Moreover, even if Dr. Goldfarb's initial affidavit were not sufficient to "corroborate reasonable grounds to support the claim[s] of medical negligence" against appellees, we believe that his second affidavit clearly was. The language of the second affidavit regarding Drs. Mabry and Applegate is unequivocal:
I am also of the opinion[,] based upon a reasonable degree of medical probability[,] that Doctors Applegate and Mabry fell below the standard of care in failing to properly monitor the drugs Julia Wolfsen was prescribed, including Anaprox, and failing to properly monitor her renal condition.
The medical records indicate that all three doctors either carbon copied each other or spoke directly to the other doctors in regard to her condition and their course of treatment and recommendations of drugs to use, regarding said treatment of Ms. Wolfsen.
In addition, Dr. Goldfarb noted that, although indicated, creatinine tests were not *1054 performed by any of the doctors on a regular basis; that, although records indicated that Dr. Mabry was aware in March 1989 that Wolfsen's "nephrotic syndrome" might be becoming worse, Dr. Mabry did not advise Wolfsen to see Dr. Applegate; and that, when Wolfsen tried to get an appointment with Dr. Applegate, she was told by Dr. Applegate that Dr. Mabry was capable of dealing with her problems.
Two recent decisions, of which the trial court did not have the benefit, provide insight regarding the proper statutory analysis to be undertaken in such cases. In the first, Duffy v. Brooker, 614 So.2d 539 (Fla. 1st DCA 1993), the trial court had stricken the defendant doctor's response, pursuant to section 766.203(3), Florida Statutes (1989), to a notice of intent to initiate litigation; and had awarded attorney fees to the claimant, pursuant to section 766.206(3). The trial court had concluded that the response, including the medical expert affidavit submitted by the doctor, was entirely conclusory; that the conclusory response constituted prima facie evidence of a lack of "a reasonable basis" for denial of the claim sufficient to shift to the doctor the burden to show compliance with the statutory "reasonable investigation requirements"; and that the doctor had failed to offer any evidence that any investigation of any sort had been performed, as required by sections 766.201-.206, Florida Statutes (1989), before the response denying negligence was issued. Affirming the trial court's decision, this court said:
When one of the parties files a motion under section 766.206, the trial court must determine whether the opposing party's claim or denial "rests on a reasonable basis" and whether the notice of intent to sue or the response rejecting the claim is "in compliance with the reasonable investigation requirements of ss. 766.201-766.212." If the greater weight of the evidence establishes that the non-moving party did not conduct a "reasonable investigation" and that its notice of intent to sue or response rejecting the claim does not "rest on a reasonable basis," the motion will be granted.
In making this determination, the court may consider any relevant evidence, including the inferences to be drawn from the text of the notice of intent to sue or response and its corroborating medical expert opinion. However, the failure to provide an adequate verified written medical expert opinion is not dispositive. If the greater weight of the evidence establishes that the non-moving party did conduct a "reasonable investigation" and that its notice of intent to sue or response rejecting the claim "rests on a reasonable basis," the motion will be denied.
614 So.2d at 544-45.
In the second case, Williams v. Powers, 619 So.2d 980 (Fla. 5th DCA 1993), the trial court had dismissed a medical negligence claim for failure to comply with sections 766.106(2) and 766.203(2). In particular, the trial court had concluded that the claimants' medical expert affidavit had been so conclusory that it failed to satisfy the statutory requirement of medical corroboration. On appeal, the court reversed, following Duffy. It said:
[W]e think the [claimants'] corroborative expert opinion was barely adequate to support the intent to sue letter. It was thus critical that they come forward with proof of steps they took to reasonably investigate their claim, and the existence of a reasonable basis therefor. As the court explained in [Duffy], failure to provide an adequate verified written medical expert opinion is not "dispositive"....
619 So.2d at 983.
Assuming that Dr. Goldfarb's affidavits had not been sufficient to "corroborate reasonable grounds to support the claim[s] of medical negligence" against appellees, or any of them, under Duffy and Williams the burden would have shifted to Wolfsen to establish by the greater weight of the evidence that a "reasonable investigation" had been conducted before the notices of intent to initiate litigation were mailed; and that the claims "rest[ed] on a reasonable basis." In making that determination, the trial court would have been *1055 obliged, pursuant to Duffy and Williams, to consider any relevant evidence.
For purposes of sections 766.201-.206, "`[i]nvestigation' means that an attorney has reviewed the case against each and every potential defendant and has consulted with a medical expert and has obtained a written opinion from said expert." § 766.202(4), Fla. Stat. (1989). At the hearing, counsel for Wolfsen testified in some detail regarding the nature and extent of his investigation. In addition to the affidavits of Drs. Goldfarb and Stein, he proffered the entry for Anaprox contained in the Physicians' Desk Reference and the prescribing information distributed by the manufacturer to physicians, both of which appear to demonstrate that Anaprox is contraindicated for someone suffering from thrombocytopenia or renal problems, because of the potential danger. He proffered Wolfsen's sworn testimony that both Dr. Mabry and Dr. Applegate had told her that they and Dr. Crane would work together as a team on her case, keeping each other informed about care and treatment; that Dr. Crane had told her when he prescribed the Anaprox that he would inform Dr. Applegate that he had done so; and that she had told Dr. Mabry that Dr. Crane had prescribed Anaprox shortly after he had done so. He proffered Dr. Crane's prescription for Anaprox, which was for fifteen 550 milligram tablets, with four refills; an amount which he suggested was inconsistent with Dr. Crane's unsworn statement that he had prescribed only a small amount of Anaprox, to ease cramps likely to be caused by an endometrial biopsy Dr. Crane had performed. He also testified that three other doctors had opined that the Anaprox had caused Wolfsen's problems, which ultimately resulted in renal failure; but that they were either unwilling or unable to testify. Finally, he testified that another doctor had opined that Drs. Crane, Mabry and Applegate had all been negligent in failing to keep each other informed regarding what drugs were being prescribed, and in failing properly to monitor Wolfsen's condition. However, that doctor had "had what was akin to a nervous breakdown" and, therefore, was unable to testify.
The trial court found it unnecessary to consider the proffer made by Wolfsen's attorney. Having carefully considered that proffer, we are of the opinion that no reasonable person could conclude that the evidence presented was not sufficient to satisfy the "reasonable investigation requirements" of sections 766.201-.206; and to establish that the claim against appellees "rest[ed] on a reasonable basis."
For the reasons expressed in this opinion, we reverse and remand with directions that the trial court reinstate the claims against appellees. In conclusion, we emphasize that if the provisions of sections 766.201-.212 are "not to be allowed to impinge upon plaintiffs' right of access to the courts, [those sections] must be construed as imposing on plaintiffs only reasonable and limited duties, for a limited time, before allowing them to file suit in courts of this state." Williams, 619 So.2d at 983 (footnote omitted). Accord Stebilla v. Mussallem, 595 So.2d 136 (Fla. 5th DCA), review denied, 604 So.2d 487 (Fla. 1992). The procedure for judicial review set out in section 766.206 cannot be converted into some type of summary proceeding to test the sufficiency, legally or factually, of medical negligence claims. Its only purpose is to ensure that a claim or denial has been preceded by a "reasonable investigation," and that it "rests on a reasonable basis"  i.e., "to eliminate frivolous claims and defenses." § 766.201(2)(a)1., Fla. Stat. (1989) (emphasis added). We do not believe that Wolfsen's claims against appellees can be characterized as "frivolous."
REVERSED and REMANDED, with directions.
ERVIN and ZEHMER, JJ., concur.