645 So.2d 86 (1994)
Charles MALDONADO, Appellant,
v.
EMSA LIMITED PARTNERSHIP; and Cedars Medical Center, Inc., Appellees.
Nos. 93-1001, 93-527.
District Court of Appeal of Florida, Third District.
November 9, 1994.
James C. Blecke, Miami, for appellant.
Holland & Knight, Daniel S. Pearson and Lucinda A. Hofmann, Adams & Adams, MaiLing E. Castillo and R. Wade Adams, Miami, for appellees.
Before BASKIN, LEVY and GERSTEN, JJ.
PER CURIAM.
Charles Maldonado appeals from final summary judgments entered in favor of Cedars Medical Center, Inc., and EMSA Limited Partnership in a medical malpractice case. We reverse the judgments.
On July 29 and August 1, 1990, Maldonado went to Cedars' emergency room complaining of foot pain. On both occasions EMSA's emergency room physicians diagnosed Maldonado's problem as an ankle sprain. On August 8, Maldonado returned to Cedars complaining of foot pain and was admitted to Cedars. Diagnosed as having ischemia, Maldonado underwent an unsuccessful aortic thrombectomy on his leg. He then underwent a below-the-knee amputation of his right leg on or about August 31, 1990.
In November 1991, Maldonado mailed Cedars a notice of intent to initiate litigation and the supporting affidavit of a general surgeon. Maldonado sent EMSA a notice *87 and affidavit in January 1992.[1] In February, Cedars denied liability and sent Maldonado the affidavit of a physician stating that Cedars was not negligent.[2] In April, EMSA responded to the notice, denied liability, and submitted the affidavit of a general surgeon stating that EMSA was not negligent.[3] In July, Maldonado filed a medical malpractice action against EMSA and Cedars[4] alleging that he suffered the amputation of his right leg as a result of the negligent treatment and care by defendants' staff. Maldonado contended that defendants failed to discern the absence of a pulse in his leg during his initial visits to Cedars misdiagnosing of Maldonado's injury. EMSA answered and raised the defense that Maldonado submitted an expert's affidavit "which does not on its face corroborate reasonable grounds to properly support the claims against this Defendant." In its answer, Cedars made a general denial of Maldonado's presuit compliance allegation. The parties proceeded to engage in discovery.
In October 1992, EMSA filed a motion for summary judgment contending, in pertinent part, that Maldonado's expert was unqualified to render an opinion.[5] The trial court granted EMSA's motion. After the statute of limitations had run, in March 1993, Cedars sought summary judgment based on the previous judgment entered in favor of EMSA and Maldonado's failure to provide a corroborating opinion that sets forth the grounds for Cedars' negligence.[6] The court did not conduct an evidentiary hearing on defendants' motions and entered final summary judgments in favor of defendants without providing the basis of its rulings. Maldonado seeks reversal of the judgments. Holding that the trial court erred in entering judgments in favor of defendants that resulted in denial of Maldonado's access to the courts, we reverse.
In Weinstock v. Groth, 629 So.2d 835, 838 (Fla. 1993), the Florida Supreme Court stated that "[the] narrow construction of the chapter 766 presuit notice requirements is in accord with the rule that restrictions on access to the courts must be construed in a manner that favors access." Patry v. Capps, 633 So.2d 9, 13 (Fla. 1994) ("when possible the presuit notice and screening statute should be construed in a manner that favors access to courts"); Boyd v. Becker, 627 So.2d 481, 483 (Fla. 1993). Such construction must not deviate from the goals of the chapter 766 presuit requirements "to alleviate the high *88 cost of medical negligence claims through early determination and prompt resolution of claims, not to deny access to the courts to plaintiffs... ." Weinstock, 629 So.2d at 838. The judgments under review run counter to this rule of construction.
The record shows that Maldonado's expert was qualified to render an opinion as to defendants' negligence in compliance with the requirements of section 766.202(5) defining "medical expert." Contrary to defendants' contention, section 766.102(6), Florida Statutes (1989), does not delineate the requisite qualifications of the expert offering the presuit affidavit.[7] Section 766.203(2) provides, in pertinent part, that "[c]orroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion from a medical expert as defined in s. 766.202(5). ..." (e.s.). Section 766.202(5) provides that "[a]s used in ss. 766.201-766.212, the term `medical expert' means a person duly and regularly engaged in the practice of his profession who holds a health care professional degree from a university or college and has had special professional training and experience or one possessed of special health care knowledge or skill about the subject upon which he is called to testify or provide an opinion." Section 766.202(5), which defines medical expert as expressly applicable to section 766.203, provides a less stringent standard than the section delineating the standard for admission of expert testimony in an action involving emergency medical services. The less stringent standard of section 766.202(5) is in keeping with the legislative aim of preventing frivolous lawsuits without denying a claimant's access to court.
Section 766.203(2) directs claimant to conduct an investigation to ascertain that there are reasonable grounds to believe that defendant was negligent. It does not require that claimant establish defendant's negligence or prove its case during the presuit screening process.
[If] the provisions of sections 766.201-212 are `not to be allowed to impinge upon plaintiffs' right of access to the courts, [those sections] must be construed as imposing on plaintiffs only reasonable and limited duties, for a limited time, before allowing them to file suit in courts of this state.'
Wolfsen v. Applegate, 619 So.2d 1050, 1055 (Fla. 1st DCA 1993) (quoting Williams v. Powers, 619 So.2d 980, 983 (Fla. 5th DCA 1993)) (citations omitted); Shands Teaching Hosp. & Clinics, Inc. v. Barber, 638 So.2d 570 (Fla. 1st DCA 1994); Ragoonanan v. Associates in Obstetrics & Gynecology, 619 So.2d 482, 484 (Fla. 2d DCA 1993); Stebilla v. Mussallem, 595 So.2d 136 (Fla. 5th DCA), review denied, 604 So.2d 487 (Fla. 1992). Section 766.102(6) concerning the admissibility of expert testimony in cases involving emergency medical services need not be read in pari materia with sections 766.202(5), and 766.203(2). "[O]nly when a statute is ambiguous will we attempt to divine legislative intent from sources extrinsic to the statutory language." Silva v. Southwest Florida Blood Bank, 601 So.2d 1184, 1188 (Fla. 1992). Compare Duffy v. Brooker, 614 So.2d 539, 543 (Fla. 1st DCA), review denied, 624 So.2d 267 (Fla. 1993). The plain words of section 766.203(2) require a corroborating opinion from a medical expert as defined in section 766.202(5); it does not require that claimant submit an affidavit from an expert as described in sections 766.102(6)(a) and (b). An opinion from an expert who is a practicing health care professional with special training and experience or knowledge and skill about the subject upon which he is called to provide an opinion is sufficient to meet the presuit screening requirements. The expert need not be an emergency room physician. See Weinstock, 629 So.2d at 835 (express mention of one thing implies exclusion of another maxim applied where court found that exclusion of psychologists from Chapter 766 definitions *89 of health care provider evidences a legislative intent that psychologists not be classified as health care providers).
Moreover, we may not engraft the more stringent requirements of section 766.102(6) onto sections 766.202(5) and 766.203(2) in contravention of the express language of the statute. See Foreman v. E.F. Hutton & Co., Inc., 568 So.2d 531 (Fla. 3d DCA 1990). Such construction necessitates an impermissible statutory revision. See Williams v. Campagnulo, 588 So.2d 982, 983 (Fla. 1991) (district court may not rewrite statute to eliminate notice requirement). Here, Maldonado's expert's affidavit asserts that the physician is a board-certified surgeon who concluded that based on his experience and a review of the hospital records, he has reasonable grounds to believe defendants' negligent care and treatment caused the amputation of Maldonado's right leg. Those qualifications do not render him incompetent to give an expert opinion pursuant to the presuit screening statutes as to defendants' alleged negligence including the failure to conduct proper tests or to discern the absence of a pulse in Maldonado's leg. Thus, the trial court erred in entering judgment in favor of EMSA on that basis.[8]
In addition, the trial court erred in granting Cedars' motion for summary judgment based on the affiant's failure to set forth facts describing the alleged negligence in the affidavit or notice of intent. Here, the notice of intent and the affidavit satisfied the presuit notice and investigation requirements by informing defendants that, after a review of the records, the expert opined that the amputation of Maldonado's right leg resulted from defendants' negligent care and treatment during his visits to Cedars' emergency room. "The corroboration statement must outline the factual basis for the opinion. Taken together, `the notice of intent to initiate and the corroborating medical expert opinion ... must sufficiently indicate the manner in which the defendant doctor allegedly deviated from the standard of care, and must provide adequate information for the defendant[] to evaluate the merits of the claim.'" Watkins v. Rosenthal, 637 So.2d 993, 994 (Fla. 3d DCA 1994) (quoting Duffy, 614 So.2d at 545) (e.s.). The absence of any additional facts is not dispositive when as here, the provided information satisfied the statutory purpose. The sufficiency of the information is demonstrated by defendant's response to the notice with an affidavit stating that defendant was not negligent. Clearly, if defendant did not have sufficient information to evaluate the merits of the claim it would have been unable to provide a responding affidavit. Furthermore, the statute provides a vehicle for informal discovery so that defendants may obtain further information to evaluate the claim. See §§ 766.106(5)-(9); .204; 205, Fla. Stat. (1989); Williams, 619 So.2d at 980; Wolfsen, 619 So.2d at 1050. The record does not reveal that defendant requested additional information during the presuit period.
The medical malpractice claimant must conduct an investigation to ascertain whether reasonable grounds exist to believe that defendants negligently treated claimant and that such negligence resulted in injury to the claimant. § 766.203(2)(a) and (b), Fla. Stat. (1989). Section 766.202(4) states that "`investigation' means that an attorney has reviewed the case against each and every potential defendant and has consulted with a medical expert and has obtained a written opinion from said expert." Maldonado's attorney has conducted a reasonable investigation and the claim is not frivolous. The attorney apparently reviewed the case, consulted with the expert and obtained a written expert opinion. The expert stated that Mr. Maldonado suffered a below-the-knee amputation of his right leg as a result of defendants' alleged failure to diagnose correctly his foot pain.
*90 We believe that Mr. Maldonado has complied with the presuit requirements and should not be denied access to the court. Therefore, the trial court erred in entering the judgments based on the inadequacy of the notice and affidavit. Barber, 638 So.2d at 571-572. For these reasons, we reverse the judgments.[9]
Reversed and remanded.
NOTES
[1] Maldonado's affiant is a board certified general surgeon who described the records that he reviewed and stated that:

5. Based on my experience and review of the records, I have reasonable grounds to believe that the care and treatment rendered to Mr. Maldonado by the Emergency Room Physicians ... and other health care providers at Cedars was negligent.
6. Based on my experience and review of the records, I have reasonable grounds to believe that this negligence caused Mr. Maldonado damages and injuries, including a below the knee amputation of the right extremity.
[2] Cedars' affiant stated, in pertinent part:

1. That I am a medical expert as defined by Florida Statute § 766.202(5);
2. That I have reviewed available medical records, office records, pathology reports, and operative procedures performed on Charles Maldonado while a patient at Cedars Medical Center, Inc. My review indicates that there is a lack of reasonable grounds for medical negligence in the claim raised by Charles Maldonado against Cedars Medical Center, Inc. pursuant to Florida Statute § 766.203(3)[.]
[3] EMSA's affiant, a board-certified surgeon, stated, in pertinent part, that

[i]t is my opinion, based on a reasonable degree of medical probability, that Emergency Medical Services Associates, Inc., and/or EMSA Limited Partnership . .. did not breach prevailing professional standards of care when affording treatment to Charles Maldonado on or about July 27, 1990 and August 1, 1990. I believe that Emergency Medical Services, and/or EMSA Limited Partnership ... at all times fell within and comported with the accepted and prevailing professional standards for such health care providers.
[4] Maldonado alleged that Cedars was vicariously responsible for the negligence of its nursing staff and for the negligence of EMSA's physicians.
[5] Although EMSA's motion is titled "Motion for Summary Judgment," it requested dismissal of the complaint.
[6] Although the record reveals that Cedars appears to have waived the issue of Maldonado's presuit compliance by failing to raise timely the issue, Ingersoll v. Hoffman, 589 So.2d 223 (Fla. 1991), it is unnecessary to resolve that issue because Maldonado has not raised that issue on appeal.
[7] Section 766.102(6)(a) requires that the testifying medical expert in a case involving emergency medical services must "have had substantial professional experience within the preceding 5 years while assigned to provide emergency medical services in a hospital emergency department." We express no opinion whether the expert rendering the opinion at trial must be qualified under section 766.102(6).
[8] EMSA contends that the Good Samaritan Act, § 768.13, Fla. Stat. (1989), applies to this case. The presuit screening statutes "were not intended to require presuit litigation of all the issues in medical negligence claims... ." Ragoonanan, 619 So.2d at 484. At this early point in the litigation, there is insufficient record basis demonstrating that the Act pertains to this case. Maldonado's treatment in an emergency room does not render the Act automatically applicable. The statute contains exceptions to its application. See § 768.13(2)(b)1; .13(2)(a), Fla. Stat. (1989). Therefore, any determination on that issue is premature. Ragoonanan.
[9] Contrary to defendants' contention, Williams v. Campagnulo, 588 So.2d 982 (Fla. 1991), does not mandate affirmance. In Patry v. Capps, 633 So.2d 9, 13 (Fla. 1994), the court stated that "Williams addressed the complete absence of presuit notice. That decision stands for the proposition that timely written notice is a condition precedent to the maintenance of a medical malpractice action... ." Clearly, this case does not involve the "complete absence of presuit notice." E.g., Shands Teaching Hosp. v. Miller, 642 So.2d 48 (Fla. 1st DCA 1994); Miami Physical Therapy Assoc., Inc. v. Savage, 632 So.2d 114 (Fla. 3d DCA 1994); Southern Neurosurgical Assoc., P.A. v. Fine, 591 So.2d 252 (Fla. 4th DCA 1991). Cf. Suarez v. St. Joseph's Hosp., Inc., 634 So.2d 217, 219 (Fla. 2d DCA 1994) (cause remanded so that plaintiff may remove any deficiency with regard to physician's verification: "Dismissal without leave to amend after the statute of limitation had expired was too severe a remedy.").