647 So.2d 849 (1994)
Charles KUKRAL and Milly Kukral, Appellants,
v.
George D. MEKRAS, M.D.; Miami Urology Institute, Inc. and Dr. John T. McDonald Foundation d/b/a Doctor's Hospital, Appellees.
No. 93-2294.
District Court of Appeal of Florida, Third District.
May 17, 1994.
Order Adopting Opinion after Grant of Rehearing January 4, 1995.
*850 Joe N. Unger, Miami, and Richard L. Katz, Coral Gables, for appellants.
George Hartz Lundeen Flagg & Fulmer, Hicks, Anderson & Blum, and Bambi G. Blum, Miami, for appellees Mekras and Miami Urology Institute, Inc.
Parenti, Falk, Waas & Frazier, Gail Leverett Parenti, Miami, for appellees Doctors' Hosp.
Before JORGENSON, COPE and GODERICH, JJ.
Order Adopting Opinion after Grant of En Banc Rehearing January 4, 1995.
PER CURIAM.
The plaintiffs, Charles and Milly Kukral, appeal from a final order dismissing their complaint for failure to comply with the pre-suit screening requirements. We affirm.
On February 21, 1992, the plaintiffs served on Doctor's Hospital and Dr. George D. Mekras notices of intent to initiate litigation for medical malpractice. The notices stated that during a medical procedure to remove genital warts undiluted acid was applied to the plaintiff's penis resulting in serious burns. These notices of intent were not accompanied by a verified written medical expert opinion when they were mailed. Miami Urology Institute, Inc. [MUI], Dr. Mekras' employer, alleges that it was not individually served with a notice of intent and that the notice sent to Dr. Mekras did not indicate that MUI was a prospective defendant.
Doctor's Hospital sent a denial of the claim to the plaintiffs accompanied by an affidavit of an expert. On August 14, 1992, the plaintiffs sent out an unverified medical expert opinion corroborating the claim of medical negligence. On September 3, 1992, the plaintiffs sent out a verification of medical expert opinion alleging negligence. Then, on October 9, 1992, the plaintiffs filed their complaint against Doctor's Hospital, Dr. Mekras, and MUI [collectively referred to as defendants] for medical malpractice. After the matter had been set for trial, the defendants filed a motion to determine whether the plaintiffs had properly complied with the statutory pre-suit screening procedures. After hearings, the trial court entered the appealed order dismissing the plaintiffs' case for failure to comply with the mandatory pre-suit screening procedures.
The plaintiffs contend that the trial court erred in dismissing their lawsuit for failing to provide a verified medical opinion of negligence with the notice of intent to initiate litigation where the facts giving rise to the injury set forth in the notice are sufficient to establish that the claim is not frivolous, where the defendants conducted their own investigation and denied negligence, and where a verified medical opinion was supplied prior to suit being filed. We disagree.
The plaintiffs sent notices of intent to initiate litigation without including the medical expert opinion as required by section 766.203, Florida Statutes (1991). Moreover, the plaintiffs did not present any evidence indicating that they consulted with any medical expert or that they conducted a good faith and reasonable investigation prior to mailing the notices as the statutes require. It is the plaintiffs failure to comply with their duty to conduct an investigation as defined by section 766.202(4), Florida Statutes (1991), that distinguishes this case from the cases relied on by plaintiffs. In Stebilla v. Mussallem, 595 So.2d 136 (Fla. 5th DCA), rev. denied, 604 So.2d 487 (Fla. 1992) and Ragoonanan v. Assocs. in Obstetrics & Gynecology, 619 So.2d 482 (Fla. 2d DCA 1993), and in Suarez v. St. Joseph's Hosp., Inc., 634 So.2d 217 (Fla. 2d DCA 1994), the plaintiffs obtained the necessary medical opinion before filing their notices.
Under section 766.206, Florida Statutes (1991), since no reasonable investigation was *851 conducted, the plaintiffs' claim was properly dismissed. The order appealed from is hereby affirmed.
COPE and GODERICH, JJ., concur.
JORGENSON, Judge, dissenting.
I dissent. By its affirmance today, the court revalidates Mr. Bumble's proposition[1] and denies Mr. Kukral his constitutionally protected guarantee of access to the courts to seek redress for the excruciating injuries that he suffered at the hands of health care professionals. The record in this case unequivocally shows that the plaintiff complied with the statutory preconditions for a medical malpractice case. Within the limitations period, plaintiff served defendants with a notice of intent to sue, conducted a reasonable presuit investigation, and provided the defendants with a verified expert medical opinion.
On July 26, 1991, plaintiff underwent surgery for the removal of genital warts.[2] Concentrated, not dilute, acetic acid was inadvertently applied, causing third degree, full-thickness chemical burns to the shaft and glans of his penis. Treatment for the burns required hyperbaric oxygen therapy, wound debridement, a cystostomy, by which a catheter was inserted through the abdominal wall into the bladder, bypassing the urethra, and a further surgical procedure by which skin from the plaintiff's thigh was grafted onto the damaged areas of his penis. Not surprisingly, the incident led to significant physical and psychological injury.
On February 21, 1992, plaintiff's counsel forwarded a Notice of Intent to Initiate Litigation for Medical Malpractice to the urologist and the hospital where the surgery was performed. The notice detailed the date of the injury and the reason why plaintiff had sought medical treatment, and described the injury suffered. Plaintiff did not include with the notice a corroborating expert medical opinion that medical malpractice had occurred. The defendants responded and conducted their own investigation, but took the position that the notice of intent was defective, as it did not include the corroborating opinion. On June 1, 1992, plaintiff's attorney provided defendants with a written expert opinion by a urologist. The expert detailed the cause, nature, and extent of plaintiff's injuries. The expert concluded that whether the physician was negligent in applying the wrong concentration of acid, or whether the hospital was negligent in labeling the solution, "this is a clear instance of medical mismanagement resulting in immediate significant physical and emotional injury to Mr. Kukral and, in my opinion, with probable long term psycho-sexual sequelae." The expert's written opinion was not verified, however, until August 18, 1992, when the doctor submitted an affidavit averring that his letter of June 1, 1992 accurately stated his opinion in this matter, and that he had not rendered any previous medical opinion that had been disqualified.[3]
The defendants rejected the claim; plaintiff filed his malpractice complaint on October 9, 1992. Defendants moved to dismiss on November 4, 1992, alleging that plaintiff had not complied with the presuit notice requirements. The trial court denied those motions, and the case proceeded for nine months through discovery and various pretrial motions. The cause was set for the three week trial period beginning on August 30, 1993. On July 20, 1993, six days before the statute of limitations was to run, defendants filed a "Motion to Determine if Plaintiff Properly Complied with Presuit Screening." The trial court granted that motion and dismissed the action, finding that plaintiff had failed to provide a corroborating expert medical opinion with the Notice of Intent, and had failed to conduct a reasonable investigation.
The Florida Supreme Court has emphasized that "when possible the presuit notice and screening statute should be construed in a manner that favors access to the courts." Patry v. Capps, 633 So.2d 9, 13 (Fla. 1994); *852 see also Weinstock v. Groth, 629 So.2d 835, 838 (Fla. 1993) ("[R]estrictions on access to the courts must be construed in a manner that favors access.") (citations omitted). This is particularly so when, as here, defendants have not been prejudiced by plaintiff's actions. Patry, 633 So.2d at 13.
Plaintiff provided a written corroborating medical expert opinion within the period of the statute of limitations, and then verified that opinion within the limitations period; he complied with the presuit notice requirements and should not be subject to the ultimate sanction  dismissal of his claim. See Suarez v. St. Joseph's Hosp., 634 So.2d 217 (Fla. 2d DCA March 23, 1994) (failure to verify medical opinion "not fatal if compliance is secured prior to the expiration of the appropriate statute of limitations."); Stein v. Feingold, 629 So.2d 998 (Fla. 3d DCA 1993) (affidavit of expert witness timely filed when filed within statute of limitations period). The judicial gloss that the majority applies to section 766.202(4) controls only when the plaintiff has failed to satisfy the presuit requirements prior to the end of the limitations period. It is then, and only then, that the malpractice complaint may be dismissed for failure to comply with the statute.[4]
Medical malpractice plaintiffs are required to provide an expert opinion "to prevent the filing of baseless litigation." Ragoonanan v. Assocs. in Obstetrics & Gynecology, 619 So.2d 482, 485 (Fla. 2d DCA 1993) (citation omitted). The requirement, however, "must be construed as imposing on plaintiffs only reasonable and limited duties." Williams v. Powers, 619 So.2d 980, 983 (Fla. 5th DCA 1993). "[F]ailure to provide an adequate affidavit is not dispositive." Id. The presuit requirements of chapter 766 were designed "to alleviate the high cost of medical negligence claims through early determination and prompt resolution of claims, not to deny access to the courts to plaintiffs." Weinstock, 629 So.2d at 838 (citation omitted). The result reached by the court today is in direct contravention of that stated goal, and of Mr. Kukral's constitutionally guaranteed right of access to the courts.
Even if we were to assume that the expert's affidavit was inadequate or untimely, the trial court should consider "any relevant evidence" to determine whether a reasonable investigation was made. Wolfsen v. Applegate, 619 So.2d 1050, 1053-54 (Fla. 1st DCA 1993); Williams, 619 So.2d at 983. It is clear from the record that plaintiff's counsel did conduct a reasonable investigation of his client's claim and jumped, albeit somewhat clumsily, through all of the procedural pre-suit hoops. The legislature has not required that during the presuit notice period plaintiffs prove their claims or prove which of several defendants is responsible for the negligence. "The procedure for judicial review set out in section 766.206 cannot be converted into some type of summary proceeding to test the sufficiency, legally or factually, of medical malpractice claims." Wolfsen, 619 So.2d at 1055. A plaintiff must only demonstrate that his claim is not frivolous. The obvious nature and the extent of plaintiff's injuries belie any argument that his claim is without merit.[5] It is of no import at this stage of the litigation that he has not pinpointed which defendant was responsible, or precisely how the wrong concentration of acid was applied.
I would reverse.
Before SCHWARTZ, C.J., and HUBBART, NESBITT, BASKIN, JORGENSON, COPE, LEVY, GERSTEN, GODERICH and GREEN, JJ.

ON MOTION FOR REHEARING EN BANC GRANTED
PER CURIAM.
The Kukrals moved for rehearing en banc. We granted rehearing en banc and now adopt the majority's opinion as the opinion of *853 the en banc court. Accordingly, the dismissal of the plaintiffs' complaint is affirmed.
Affirmed.
HUBBART, NESBITT, COPE, GERSTEN, GODERICH and GREEN, JJ., concur.
JORGENSON, J. (dissenting).
I adhere to the views expressed in my prior dissent.
SCHWARTZ, C.J., and BASKIN and LEVY, JJ., concur.
NOTES
[1] "If the law supposes that, the law is a ass  a idiot." Charles Dickens, Oliver Twist, Ch. 51.
[2] Unfortunately there is no genteel way to describe plaintiff's injuries. Were we to spare the reader's sensibilities by glossing over the details, we would do plaintiff a grave disservice by masking the nature and degree of his claim.
[3] The parties had agreed to extend the presuit notice investigative period.
[4] The court does not cite even one case that supports the result reached today.
[5] Plaintiff's attorney aptly described the alleged negligence in this case in his response to defendants' motion to dismiss: "There is no complex medical judgment which must be made as in the case where the effectiveness of one treatment program versus another is called into question. The negligence in this case is akin to the kind of negligence associated with amputating a wrong leg."