913 So.2d 635 (2005)
Winston LARGIE and Luvon Largie, Appellants,
v.
Michael GREGORIAN, M.D., Michael Gregorian, M.D., P.A., Jessica Wang, A.R.N.P.C., Steven Meyerson, M.D., and Steven Meyerson, M.D., P.A., Appellees.
No. 3D04-2701.
District Court of Appeal of Florida, Third District.
July 13, 2005.
Rehearing and Rehearing Denied November 7, 2005.
*636 Laurie Waldman Ross and Theresa Girten; Barbara C. McCauley, Miami, for appellants.
Mintzer, Sarowitz, Zeris, Ledva & Meyers, Coral Gables, and Barbara S. Diamond, for appellee, Jessica Wang.
Before FLETCHER, WELLS, and CORTIÑAS, JJ.
Rehearing and Rehearing En Banc Denied November 7, 2005.
*637 WELLS, J.
Winston and Luvon Largie, plaintiffs below, appeal a summary judgment in their medical malpractice action in favor of defendant, registered nurse practitioner Jessica Wang. Because we agree that the Largies failed to comply with presuit investigation requirements delineated in Chapter 766 prior to running of the statute of limitations, we affirm.
In March and April 2000, Winston Largie was seen by Jessica Wang, an advanced registered nurse practitioner, at the offices of Dr. Michael Gregorian. Nurse Wang's notes confirm that a blood test performed on Mr. Largie during this period showed an elevated prostate specific antigen (PSA) level and that a follow-up PSA test should be performed. Although Mr. Largie continued to be seen at Dr. Gregorian's offices until the following May, no follow up PSA tests were done.
In August 2001, Mr. Largie started seeing Dr. Steven Meyerson. Dr. Meyerson also had a blood test performed on Mr. Largie, which, like the test performed while he was a patient of Dr. Gregorian's office, showed that Mr. Largie had an elevated PSA level. Dr. Meyerson did not, however, immediately refer Mr. Largie to a urologist. In May 2002, Mr. Largie was diagnosed with prostate cancer.
In late 2002, the Largies served Dr. Gregorian with a notice of intent to initiate a medical malpractice action. That notice was accompanied by a corroborating affidavit stating:
AFFIDAVIT OF EXPERT OPINION
1. My name is Frank Waxman. I am a physician licensed to practice medicine in the State of Florida. I am a primary care physician.
2. I have review (sic) the medical records of Winston Largie including the office records of Dr. Michael Gregorian.
3. Mr. Largie had an elevated PSA in April 2000 which required further follow up. Dr. Gregorian as well as Dr. A. Scott Dansky[1] failed to do a follow up to Mr. Largie's elevated PSA.
4. Failure to do a follow up to an elevated PSA is a deviation from the standard of care. In this case it is probable that such failure caused a delay in the diagnosis of Mr. Largie's prostate cancer. Such delay probably caused the cancer to develop further causing a negative impact on the patient.
5. No opinion of mine has been disqualified in any court.
Under penalty of perjury, I declare that I have read the above affidavit and the facts stated in it are true.
(Emphasis added).
On January 10, 2003, the Largies filed suit against Dr. Gregorian for medical malpractice. Although they had served neither a notice of intent to initiate litigation nor a corroborating affidavit on Nurse Wang, they alleged a medical malpractice claim against her as well. It was not until seven months after the action was filed against Nurse Wang that she was served with a notice of intent and the same corroborating affidavit that had been served on Dr. Gregorian.
The action against Nurse Wang was dismissed and re-filed in November 2003. See § 766.106(3)(a), Fla. Stat. (2002)("[n]o suit may be filed for a period of 90 days after notice is mailed to any prospective defendant ... [during which] the prospective *638 defendant's insurer or self-insurer shall conduct a review to determine the liability of the defendant"). Nurse Wang then challenged the Largies' compliance with Chapter 766 presuit investigation requirements claiming that they had failed to provide corroboration of reasonable grounds to support a claim of medical malpractice. The trial court, following two hearings on the matter, agreed, stating that "each defendant has a right and you have an obligation as plaintiff's lawyer to do a separate investigation as to each one and you must provide a separate affidavit as to the negligence of everybody that you claim was negligent [and y]ou haven't done it here." The court below entered judgment in Nurse Wang's favor. For the following reasons, we affirm.
As the Florida Supreme Court has repeatedly stated, the presuit procedures delineated in Chapter 766 are "intended to address a legitimate legislative policy decision relating to medical malpractice and establish[ ] a process intended to promote the settlement of meritorious claims at an early stage without the necessity of a full adversarial proceeding." Williams v. Campagnulo, 588 So.2d 982, 983 (Fla. 1991); see also Patry v. Capps, 633 So.2d 9, 11-12 (Fla. 1994) (stating the purpose of "the presuit notice and screening requirements set forth in the statute ... are `designed to facilitate the amicable resolution of medical malpractice claims'" and to "promote the settlement of meritorious claims early in the controversy in order to avoid full adversarial proceedings") (quoting Ingersoll v. Hoffman, 589 So.2d 223, 224 (Fla.1991)).
To accomplish this goal, Chapter 766 of the Florida Statutes sets out "a complex presuit investigation procedure that both the claimant and defendant must follow before a medical negligence claim may be brought in court." Kukral v. Mekras, 679 So.2d 278, 280 (Fla.1996). While the procedures set forth in Chapter 766 are not intended to deny access to the courts, they are "more than mere technicalities." Correa v. Robertson, 693 So.2d 619, 621 (Fla. 2d DCA 1997); see also Apostolico v. Orlando Reg'l Health Care Sys., Inc., 871 So.2d 283, 286 (Fla. 5th DCA 2004)("Florida courts are required to construe the Medical Malpractice Act `so as not to unduly restrict a Florida citizen's constitutionally guaranteed access to the courts, while at the same time carrying out the legislative policy of screening out frivolous lawsuits and defenses'")(quoting Kukral, 679 So.2d at 284); Melanson v. Agravat, 675 So.2d 1032, 1033-1034 (Fla. 1st DCA 1996) (confirming that although the presuit notice and screening statutes should be construed in favor of access to the courts, presuit notice and screening requirements are more than mere technicalities).
The first step in implementing this policy "requires a claimant to determine whether reasonable grounds exist to believe that someone acted negligently in the claimant's care or treatment and that this negligence caused the claimant's injury." Kukral, 679 So.2d at 280. This requires both investigation and corroboration of the results of the investigation by "a verified written medical expert opinion." § 766.203(2), Fla. Stat. (2002); see also § 766.104(1), Fla. Stat. (2002) (providing that no medical negligence action may be filed unless the attorney filing the action has made "a reasonable investigation ... to determine that there are grounds for a good faith belief that there has been negligence").
By definition, an investigation consists of: (1) review of the case against each potential defendant; (2) consultation with a medical expert; and; (3) written corroboration of negligence by a medical expert:

*639 "Investigation" means that an attorney has reviewed the case against each and every potential defendant and has consulted with a medical expert and has obtained a written opinion from said expert.
§ 766.202(4), Fla. Stat. (2002).
Requiring a written expert opinion as part of the presuit investigation assures the defendant that the claim was preceded by a reasonable investigation; "that there is justification for the Plaintiffs' claim, i.e., that it is not a frivolous medical malpractice claim ... [; and] that the claim is legitimate." Kukral, 679 So.2d at 282; Wolfsen v. Applegate, 619 So.2d 1050, 1054-55 (Fla. 1st DCA 1993)(stating that the purpose of reviewing a corroborating affidavit is "to ensure that a claim or denial has been preceded by a `reasonable investigation,' and that it `rests on a reasonable basis'-i.e., `to eliminate frivolous claims and defenses'")(quoting § 766.201(2)(a)1, Fla. Stat. (1989)).
The expert opinion provided to Nurse Wang completely fails to satisfy these purposes. It makes no mention of Nurse Wang whatsoever, either by name or job description; it makes no reference to the standard of care applicable to a certified registered nurse practitioner or to any deviation from that standard of care; and, it does not suggest, much less corroborate, that any investigation took place with regard to Nurse Wang or that any reasonable grounds exist to support the Largies' claim against her as expressly mandated by Chapter 766. In fact, and as the most recent amendments to Chapter 766 confirm, the expert opinion affidavit does not suggest that the expert rendering the opinion is qualified to opine as to a nurse practitioner. See § 766.102(6), Fla. Stat. (2004) (providing that as to a nurse practitioner an expert opinion must be rendered by a licensed physician who otherwise qualifies as an expert witness and who "by reason of active clinical practice or instruction of students, has knowledge of the applicable standard of care for ... nurse practitioners"); see also § 766.203(2), Fla. Stat. (2004) (requiring a corroborating opinion from a medical expert as defined in section 766.202(6)); § 766.202(6), Fla. Stat. (2004)(defining a medical expert as one who meets the requirements of section 766.102). Thus, while the Largies' expert affidavit may be sufficient as to the physicians named in it, it fails to demonstrate any investigation as to Nurse Wang and is wholly insufficient.
Moreover, when pointedly asked to explain what had been done to investigate the Largies' claim against Nurse Wang, counsel did no more than point to the affidavit referencing only Drs. Gregorian and Dansky and their breach of the standard of care. This was inadequate. Because the record clearly shows that the Largies failed to conduct a reasonable investigation as to "each and every potential defendant," specifically, Nurse Wang, the legislative purpose of Chapter 766 was frustrated, mandating elimination of the claim against her from this suit. See § 766.206(2), Fla. Stat. (2002) (authorizing dismissal of actions predicated on notices of intent not in compliance with the reasonable investigation requirements of sections 766.201 through 766.212); § 766.203(2), Fla. Stat. (2002)(stating that prior to issuing a notice of intent to sue, the claimant "shall conduct an investigation to ascertain that there are reasonable grounds" to initiate a medical negligence action and that corroboration of such "shall be provided by submission of a verified written medical expert opinion . . . at the time the notice of intent to initiate litigation is mailed").
The Largies maintain that it is of no moment that Nurse Wang was not specifically *640 named in the verified expert affidavit since the notice of intent advised her of the allegations against her. At oral argument, the Largies fastened onto Maldonado v. EMSA Ltd. P'ship, 645 So.2d 86, 89 (Fla. 3d DCA 1994), to support this proposition, a position adopted by the dissent. This argument misses the point, as Maldonado confirms.
Maldonado involved an action in which the two defendants named in a medical malpractice suit (a partnership that provided emergency physicians to a hospital and the hospital itself) were the same two potential defendants named in the corroborating affidavit. Two issues were raised on appeal: (1) the qualifications of the expert to render an opinion, and (2) whether the notice of intent and affidavit provided sufficient information of the plaintiff's claim to permit the response mandated by Chapter 766. No issue was raised as to whether the corroborating affidavit was sufficient to confirm that the statutorily mandated investigation had taken place as to one of the defendants named in the suit for the simple reason that both defendants named in the suit had also been named in the affidavit.
Regarding whether "the trial court erred in granting .... [a] motion for summary judgment based on the ... failure to set forth facts describing the alleged negligence in the affidavit or notice of intent," the Maldonado court correctly concluded that the corroborating affidavit need only "outline the factual basis for the opinion," and that "[t]aken together, `the notice of intent to initiate and the corroborating medical expert opinion ... must sufficiently indicate the manner in which the defendant doctor allegedly deviated from the standard of care, and must provide adequate information for the defendant[] to evaluate the merits of the claim.'" Id. at 89. Deciding whether a defendant named in both the notice and the affidavit received sufficient information to respond is not the same as deciding whether a verified expert opinion, which makes no mention of a defendant named in a malpractice suit, the standard of care applicable to that defendant, or any breach of that standard of care, is sufficient to corroborate that an investigation has determined that the claim is legitimate as to that defendant. As the Florida Supreme Court has confirmed, a notice of intent and a corroborating affidavit serve distinct purposes. One advises of an event, the other corroborates legitimacy of a claim following investigation; the two do not supplement one another:
There are disparate purposes underlying the requirement of serving a notice of intent to sue and the requirement of providing a verified written medical expert opinion corroborating reasonable grounds to support a claim of medical negligence. The purpose of a notice of intent to sue is to give the defendant notice of the incident in order to allow investigation of the matter and promote presuit settlement of the claim. The expert corroborative opinion, on the other hand, is designed to prevent the filing of baseless litigation ....

The expert opinion to be supplied is not one which delineates how the defendants were negligent.... Obviously, the corroborative medical opinion adds nothing to the Plaintiffs' notice of their claim. It merely assures the Defendants, and the court, that a medical expert has determined that there is justification for the Plaintiffs' claim, i.e., that it is not a frivolous medical malpractice claim. The purpose of the medical expert opinion is to corroborate that the claim is legitimate, not to give notice of it.

*641 Kukral, 679 So.2d at 282 (quoting Stebilla v. Mussallem, 595 So.2d 136, 138 (Fla. 5th DCA 1992))(first emphasis added).
Where, as here, the verified affidavit does not confirm that, as to a defendant, an investigation has taken place, (that is, that the claim against that defendant is "legitimate"), this statutory requirement cannot be cured by unverified statements regarding that defendant detailed in the notice of intent. Because the issue in this case is whether the plaintiffs fulfilled their statutory presuit obligations and not whether the defendant had sufficient information to respond, Maldonado, 645 So.2d at 89, is in no way dispositive.
Of course, Nurse Wang's response to the Largies' notice and affidavit cannot be read as a waiver of the requirement of a corroborating medical opinion as the Largies suggest. As the court in Archer v. Maddux, 645 So.2d 544, 546-47 (Fla. 1st DCA 1994), stated when faced with a similar argument:
We do not believe the defendants' own investigation, presumably conducted in a good faith effort to comply with section 766.106(3), Florida Statutes (1993), can fairly be construed as a waiver of their right to a corroborating medical opinion. If Ms. Archer's timely-filed notice of intent to litigate fulfilled a purpose of the presuit requirements by giving Dr. Maddux sufficient notice to evaluate Archer's claim with an eye toward disposition out of court, so much the better.
But this does not excuse the lack of a verified written medical expert opinion. "There are disparate purposes underlying the requirement of serving a notice of intent to sue and the requirement of providing a verified written medical expert opinion corroborating reasonable grounds to support a claim of medical negligence." Stebilla, 595 So.2d at 139. One clear purpose of requiring corroboration is to spare all parties (not to mention the judiciary) the time and expense of litigating spurious claims. The expert opinion requirement is designed "to prevent the filing of baseless litigation... [and] to corroborate that the claim is legitimate." Stebilla, 595 So.2d at 139. No party should be called on to defend at trial against allegations no competent witness can be found to support.
(Emphasis added).
Any other result would run counter to the very intent of the presuit provisions, that is, to reduce the "high cost of medical malpractice claims in the state ... by requiring early determination of the merit of claims .... [by means of] reasonable investigation preced[ing] ... malpractice claims." Musculoskeletal Inst. Chartered v. Parham, 745 So.2d 946, 949 (Fla.1999)(quoting § 766.201, Fla. Stat. (1989)).
In sum, the problem here is that the expert opinion does not suggest, much less demonstrate, that any expert concluded that there were reasonable grounds to believe that Nurse Wang was negligent in her care or treatment of the plaintiff. Thus, there was no confirmation that plaintiffs had conducted a reasonable investigation as to this defendant or that there existed "reasonable grounds to initiate medical negligence litigation" against this nurse. § 766.203(2), Fla. Stat. (2002). What makes this failure even more egregious is that Nurse Wang gave notice that the affidavit was insufficient more than six months before expiration of the statute of limitations, yet the Largies did nothing to rectify the defect.
In Correa, 693 So.2d at 621, the defendants maintained that the corroborating affidavit was insufficient because the affiant was not a medical expert. Although *642 this "defect" was raised long before the statute of limitations ran, the claimant did nothing to address it. The Second District concluded the failure to comply with presuit notice requirements warranted dismissal observing "it was human failure, not the presuit requirements which barred [claimant] from entry to the courthouse". Correa, 693 So.2d at 621 (quoting Royle v. Florida Hospital-East Orlando, 679 So.2d 1209, 1212 (Fla. 5th DCA 1996)) (citations omitted); see Winson v. Norman, 658 So.2d 625, 626 (Fla. 3d DCA 1995)(affirming an order striking an affidavit and dismissing an action after the limitations period had run, where the corroborating opinion was not from a qualified medical expert because "one of the primary thrusts of Florida's statutory medical malpractice scheme is to `weed out' cases which are not, even prima facie, supported by some reliable independent indication of their merits"); see also McPherson v. Phillips, 877 So.2d 755, 760 (Fla. 4th DCA 2004)(noting that the statute of limitations "circumscribe[s] the trial court's discretion in dealing with a [claim of] Chapter 766 noncompliance"); Tapia-Ruano v. Alvarez, 765 So.2d 942, 943-44 (Fla. 3d DCA 2000)(affirming dismissal where the statute of limitations had run and plaintiff provided no reason for failure to comply with the presuit requirements); Central Florida Reg'l Hosp. v. Hill, 721 So.2d 404, 406 (Fla. 5th DCA 1998)(finding that "[t]he failure to provide corroboration is fatal if the limitation period has run"). The same reasoning applies here.
Therefore, on the record before us, we cannot conclude that the court below erred in deciding that Nurse Wang was entitled to summary judgment based on the total failure of the Largies to demonstrate that, as to this defendant, the presuit investigation requirements of Chapter 766 had been satisfied. Accordingly, the order under review is affirmed.
FLETCHER and WELLS, JJ., concur.
CORTIÑAS, J. (dissenting).
This appeal involves the sufficiency of plaintiffs' pre-suit notice and affidavit to inform nurse Jessica Wang of "reasonable grounds" for a claim of medical negligence under Section 766.203, Florida Statutes (2000).
Section 766.203, Florida Statutes (2000) provides:
(2) Presuit investigation by claimant. Prior to issuing notification of intent to initiate medical negligence litigation pursuant to s.766.106, the claimant shall conduct an investigation to ascertain that there are reasonable grounds to believe that:
(a) Any named defendant in the litigation was negligent in the care or treatment of the claimant; and
(b) Such negligence resulted in injury to the claimant.
Corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion from a medical expert as defined in s.766.202(5), at the time the notice of intent to initiate litigation is mailed, which statement shall corroborate reasonable grounds to support the claim of medical negligence.
The notice given to nurse Wang by plaintiffs stated, in pertinent part:
Notice is hereby sent pursuant to § 766.106 Florida Statutes of our intention to bring a medical negligence suit against you for your failure to do a follow-up PSA [prostate specific antigen] test on Mr. Largie and to refer him to a urologist for elevated PSA in April 2000.
*643 The affidavit of plaintiffs' expert stated, in pertinent part:
3. Mr. Largie had an elevated PSA in April 2000 which required further follow up. Dr. Gregorian as well as Dr. A. Scott Dansky failed to do a follow up to Mr. Largie's elevated PSA.
4. Failure to do a follow up to an elevated PSA is a deviation from the standard of care. In this case it is probable that such failure caused a delay in the diagnosis of Mr. Largie's prostate cancer. Such delay probably caused the cancer to develop futher [sic] causing a negative impact on the patient.
After receiving this notice and affidavit, nurse Wang procured and filed an opposing affidavit from a medical expert stating that she "adequately assessed and evaluated Winston Largie" and that her "follow up plans for Winston Largie were appropriate and within the applicable standard of care."
I respectfully dissent as I believe that the notice and affidavit provided by plaintiffs were sufficient to meet the statutory requirements of Section 766.203, Florida Statutes (2000).
The Florida Supreme Court has recognized that "the medical malpractice statutory scheme must be interpreted liberally so as to not unduly restrict a Florida citizen's constitutionally guaranteed access to the courts...." Kukral v. Mekras, 679 So.2d 278, 284 (Fla.1996). Such pre-suit notice and screening statutes should be construed in a manner that favors access to the courts. Patry v. Capps, 633 So.2d 9, 13 (Fla.1994). In construing this statute liberally, courts have recognized that the statutory intent of the pre-suit investigation and notice requirements was to screen out frivolous lawsuits and alleviate the high costs of medical malpractice claims.
See Kukral, 679 So.2d at 284; Faber v. Wrobel, M.D., 673 So.2d 871, 873 (Fla. 2d DCA 1995). These statutes were not intended to deny parties access to the courts on the basis of technicalities. Faber, 673 So.2d at 873; Ragoonanan v. Associates in Obstetrics, 619 So.2d 482, 484 (Fla. 2d DCA 1993).
In Maldonado v. EMSA Ltd. P'ship, 645 So.2d 86, 89 (Fla. 3d DCA 1994), this court held that the notice and the affidavit, "taken together," must sufficiently indicate the manner in which the defendant allegedly deviated from the standard of care and must provide adequate information for the defendant to evaluate the merits of the claim. The affidavit in Maldonado stated, in pertinent part:
5. Based on my experience and review of the records, I have reasonable grounds to believe that the care and treatment rendered to Mr. Maldonado by the Emergency Room Physicians... and other health care providers at Cedars was negligent.
6. Based on my experience and review of the records, I have reasonable grounds to believe that this negligence caused Mr. Maldonado damages and injuries, including a below the knee amputation of the right extremity.
Maldonado, 645 So.2d at 90 n. 1. In that case, we emphasized that "the sufficiency of the information is demonstrated by defendant's response to the notice with an affidavit stating that defendant was not negligent." Maldonado, 645 So.2d at 89. The court observed that if the defendant did not have sufficient information to evaluate the merits of the negligence claim, it would have been unable to provide a responding affidavit. Maldonado, 645 So.2d at 89. Finding that Mr. Maldonado complied with the pre-suit statutory requirements, *644 this court reversed the entry of summary judgment in favor of the defendants and noted that the trial court's judgments ran counter to the rule that such statutory requirements should be construed in a manner that favors access to the courts. Maldonado, 645 So.2d at 90.
I believe that the reasoning and holding in Maldonado apply to the instant case and necessitate a finding that Mr. Largie complied with the statutory requirements of Section 766.203, Florida Statutes (2000).
Plaintiffs' notice to nurse Wang expressly articulated their "intention to bring a medical negligence suit against [her] for [her] failure to do a follow-up PSA test on Mr. Largie and to refer him to a urologist for elevated PSA in April 2000." In addition, the corresponding medical expert affidavit stated:
Failure to do a follow up to an elevated PSA is a deviation from the standard of care. In this case it is probable that such failure caused a delay in the diagnosis of Mr. Largie's prostate cancer. Such delay probably caused the cancer to develop futher [sic] causing a negative impact on the patient.
As in Maldonado, taken together, the notice and the affidavit here satisfied the pre-suit notice and investigation requirements by informing nurse Wang that, in failing to follow up on Mr. Largie's elevated PSA, she deviated from the standard of care and, as a result, her actions delayed the diagnosis of Mr. Largie's prostate cancer and caused the cancer to further develop. The absence of additional facts pertaining to nurse Wang is not dispositive when, as in this case, the provided information satisfied the statutory requirements. Maldonado, 645 So.2d at 89. Also, as in Maldonado, the sufficiency of the notice and affidavit is demonstrated by nurse Wang's response to the notice with her own medical expert affidavit stating that she "adequately assessed and evaluated Winston Largie" and that her "follow up plans for Winston Largie were appropriate and within the applicable standard of care." Had defendant lacked sufficient information to evaluate the merits of plaintiffs' negligence claim, she would have been unable to provide such a responsive affidavit. Our reasoning in Maldonado applies to this case and suggests that, when taken together, Plaintiffs' notice and affidavit were sufficient to meet the statutory requirements of Section 766.203, Florida Statutes (2000). See Apostolico v. Orlando Reg'l Health Care Sys., Inc., 871 So.2d 283 (Fla. 5th DCA 2004)(affidavit from nurse opining that hospital and its staff failed to meet the appropriate standard of care was deemed sufficient to satisfy statutory pre-suit requirements).
The majority opinion appears to read into Section 766.203, Florida Statutes (2000), a requirement that there be an individual affidavit of negligence against each defendant. Because a plain reading of the statute does not contain such a requirement, I would not interject one.
On its face, the statute requires a corroborating medical affidavit prior to commencing "medical negligence litigation." Section 766.203(2), Florida Statutes (2000). As such, the statute only requires that the affidavit support a medical negligence action. The statute does not require an affidavit supporting a negligence claim against each prospective defendant. See Apostolico, 871 So.2d at 288-89 (concluding that for presuit purposes, a nurse or any other medical professional, with appropriate experience or training, may qualify as a medical expert to corroborate that there were reasonable grounds to initiate a medical malpractice action); Columbia/JFK Med. Ctr. Ltd. P'ship v. Brown, 805 So.2d 28 (Fla. 4th DCA 2002)(pre-suit requirement satisfied where affidavit addressed *645 one theory of negligence against the hospital despite later negligence claim on a different theory).
In Davis v. Orlando Regional Medical Center, 654 So.2d 664, 665-66 (Fla. 5th DCA 1995), the Fifth District explained that the purpose of the pre-suit notice and expert's affidavit to corroborate the claim was not to notify the defendants as to how they were negligent, but to demonstrate that the claim is legitimate. In Davis, the court stated:
The expert opinion to be supplied is not one which delineates how the defendants were negligent. Section 766.104 refers to a written medical opinion "that there appears to be evidence of medical negligence." Section 766.203(2) provides that the medical expert opinion is for "corroboration of reasonable grounds to initiate medical negligence litigation." And § 766.205(1) specifically provides that the medical opinion need only corroborate that "there exists reasonable grounds for a claim of negligent injury." Obviously, the corroborative medical opinion adds nothing to the Plaintiffs' notice of their claim. It merely assures the Defendants, and the court, that a medical expert has determined that there is justification for the Plaintiffs' claim, i.e., that it is not a frivolous medical malpractice claim. The purpose of the medical expert opinion is to corroborate that the claim is legitimate, not to give notice of it.
Davis, 654 So.2d at 665. The majority opinion places an additional hurdle to bring a medical malpractice claim that the Legislature did not provide for in enacting Section 766.203, Florida Statutes (2000). In so doing, it runs counter to the directive in the Florida Constitution mandating access to the courts. Art. I, § 21, Fla. Const.
For these reasons, I must respectfully dissent.
NOTES
[1] Dr. Dansky is a urologist to whom Mr. Largie was referred in April 2000 for treatment of a urinary tract infection. Dr. Dansky was neither advised of Mr. Largie's elevated PSA level nor did Dr. Dansky independently order a PSA test.