911 So.2d 285 (2005)
Alfred BONATI, M.D., Gulf Coast Orthopedic CenterAlfred Bonati, M.D., P.A., Petitioners,
v.
Robin ALLEN, David Hirschauer, D.O., Anthony R. Mork, M.D., and Scott M. Haufe, M.D., Respondents.
No. 2D05-638.
District Court of Appeal of Florida, Second District.
September 30, 2005.
Gary A. Shipman and William E. Whitney of Dunlap, Toole, Shipman & Whitney, P.A., Tallahassee, for Petitioners.
J. Scott Murphy of Allen & Murphy, P.A., Maitland, for Respondent, Robin Allen.
*286 No appearance for Appellees David Hirschauer, D.O., Anthony R. Mork, M.D., and Scott M. Haufe, M.D.
FULMER, Chief Judge.
This certiorari proceeding arises from a medical malpractice action brought by Robin Allen against Alfred Bonati, M.D.; Gulf Coast Orthopedic Center  Alfred Bonati, M.D., P.A. ("Gulf Coast"); David Hirschauer, D.O.; Anthony R. Mork, M.D.; and Scott M. Haufe, M.D. Dr. Bonati petitions this court for a writ of certiorari to review an order that denied his motion to dismiss Allen's complaint based on her failure to comply with the presuit screening requirements of chapter 766, Florida Statutes (2002). We grant the petition and remand with instructions to dismiss Dr. Bonati individually from the suit.
Allen's complaint alleges the following facts: Drs. Bonati, Hirschauer, Mork, and Haufe were employees of Gulf Coast. On March 20, 2000, Allen consulted with Dr. Bonati regarding her neck and arm pain. She had a five-year history of discomfort pertaining to her cervical spine. Dr. Bonati recommended cervical foramenoplasty surgery at C6/C7 on the right. On March 23, 2000, Dr. Craig R. Wolff performed surgery on Allen that, the complaint alleged, "purportedly included a `cervical foramenoplasty' and laminotomy at C6/C7 along with cervical nerve decompression." On July 19, 2000, Dr. Mork performed surgery, "which included microsurgical anterior discectomy with decompression of spinal cord and nerve roots at C3/C4 on the right." On July 26, 2000, Dr. Mork performed "micro surgical anterior cervical diskectomy, C6/C7, right and foramenostomy." The procedures performed by Drs. Mork and Wolff did not result in any significant anatomical changes to Allen's neck and did not alleviate Allen's problem or symptoms. Following each procedure Drs. Hirschauer and Haufe performed epidural steroid injections, purportedly to prevent a hematoma from hardening and irritating the nerve root.
Count I of the complaint alleged that Dr. Bonati was negligent as follows:
a. By failing to properly diagnose and treat the true etiology and cause of ROBIN ALLEN's neck pain, and by failing to recommend the proper treatment for same;
b. By improperly, negligently and unnecessarily recommending and performing "cervical foramenoplasties", when such procedures were inappropriate, ineffective and unnecessary ....
Count II of the complaint alleged the negligence of Dr. Mork, count III alleged the negligence of Dr. Hirschauer, count IV alleged the negligence of Dr. Haufe, and count V alleged the vicarious liability of Gulf Coast.
Prior to filing suit, Allen conducted a presuit investigation pursuant to section 766.203, Florida Statutes, and thereafter served a notice of intent to initiate litigation pursuant to section 766.106(2). In the notice, Alfred Bonati, M.D., was named as one of the persons alleged to have deviated from the prevailing professional standard of care. As corroboration of her claims, Allen submitted the affidavit of a board-certified orthopedic surgeon, Dr. John Ogden. Dr. Ogden's affidavit does not mention Dr. Bonati by name. Rather, it provides in pertinent part:
3. Based upon my review of [Allen's medical] records, it is my opinion that Anthony R. Mork, M.D., was negligent in performing the surgery of July 26, 2000, on Robin Allen, as the procedure described as a "micro surgical anterior cervical diskectomy, C6/C7, right and foramenostomy["] was improperly performed. Specifically, using the procedure as described made it virtually *287 impossible for a significant amount of tissue to be removed which purportedly was causing the patient's problems. In fact, the pre-operative and post-operative MRI's look exactly the same, indicating that absolutely nothing significant was done for the patient on July 26, 2000. Moreover, the selection of this procedure was inappropriate for this patient, as the procedure performed did not address the patient's underlying problem, which was a mechanical dysfunction, which, if surgery was needed at all, required a complete removal of the disc, and concomitant fusion.
4. The treatment performed by Anthony R. Mork, M.D., resulted in unnecessary trauma to the patient, increased degenerative changes, and aggravation of the patient's then existing condition.
5. Moreover, the treatment rendered by the "pain management specialists", David Hirschauer, D.O., and Scott Haufe, M.D., involving the placement of epidural steroid injections post-operatively purportedly to "prevent" a hematoma from hardening and irritating the nerve root is a procedure completely without scientific or medical support, and was completely unnecessary and uncalled for. It is my opinion that the treatment rendered by David Hirschauer, D.O., and Scott Haufe, M.D., deviated from acceptable standards of medical care.
Dr. Bonati filed a motion to dismiss asserting that Allen had not complied with section 766.203 and that the complaint should be dismissed pursuant to section 766.206(2). The trial court denied the motion. In petitioning this court to review that denial, Dr. Bonati asserts that Allen failed to comply with the presuit screening requirements because the affidavit of Allen's expert, Dr. Ogden, provides corroboration only for claims against Drs. Mork, Hirschauer, and Haufe. He contends that the record is devoid of a written medical expert opinion corroborating Allen's claim that he committed any medical negligence which resulted in injury to Allen.
Allen responds that the purpose of chapter 766 is to ensure the legitimacy of medical malpractice claims, not to ensure notice to defendants of exactly how they were negligent. She asserts that the notice of intent was sufficient to give notice to Dr. Bonati that she intended to pursue a claim against him. Furthermore, the fact that the expert opinion did not name Dr. Bonati, she contends, is not determinative because the purpose of the affidavit is simply to ensure the claim was not frivolous.
The presuit notice and screening statute is to be construed in a manner that favors access to courts. See Patry v. Capps, 633 So.2d 9, 13 (Fla.1994). The statutory scheme does not require that the corroborating expert's affidavit give notice of every possible instance of medical negligence. Davis v. Orlando Reg'l Med. Ctr., 654 So.2d 664 (Fla. 5th DCA 1995). However, section 766.203(2) requires that
the claimant shall conduct an investigation to ascertain that there are reasonable grounds to believe that:
(a) Any named defendant in the litigation was negligent in the care or treatment of the claimant; and
(b) Such negligence resulted in injury to the claimant.
Corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion....
The chapter defines "investigation" to mean "that an attorney has reviewed the case against each and every potential defendant and has consulted with a medical *288 expert and has obtained a written opinion from said expert." § 766.202(4).
We agree with Dr. Bonati that the presuit notice requirements have not been satisfied as to him. In reaching this conclusion, we have found persuasive the recent decision of the Third District in Largie v. Gregorian, 913 So.2d 635, 2005 WL 1631086 (Fla. 3d DCA July 13, 2005). In that case, the court upheld a summary judgment entered in favor of one defendant, Jessica Wang, a registered nurse practitioner who worked in the office of another defendant, Dr. Gregorian. The court determined that the plaintiffs failed to comply with the presuit investigation requirement as to Nurse Wang prior to the running of the statute of limitations. Specifically, the plaintiffs attempted to rely on a corroborating affidavit that named Dr. Gregorian and another doctor but did not name Nurse Wang.
The expert opinion provided to Nurse Wang completely fails to satisfy [the statutory] purposes. It makes no mention of Nurse Wang whatsoever, either by name or job description; it makes no reference to the standard of care applicable to a certified registered nurse practitioner or to any deviation from that standard of care; and, it does not suggest, much less corroborate, that any investigation took place with regard to Nurse Wang or that any reasonable grounds exist to support the Largies' claim against her as expressly mandated by Chapter 766 .... Thus, while the Largies' expert affidavit may be sufficient as to the physicians named in it, it fails to demonstrate any investigation as to Nurse Wang and is wholly insufficient.
913 So.2d at 639.
Just as the Largies' claim did not mention Nurse Wang, here, the expert affidavit relied on by Allen does not mention Dr. Bonati by name. Because Dr. Ogden's affidavit does not serve its purpose of corroborating that Dr. Bonati acted negligently toward Allen, the presuit investigation requirement has not been satisfied. Accordingly, the trial court departed from the essential requirements of law in denying Dr. Bonati's motion to dismiss.
Petition for writ of certiorari granted; remanded for further proceedings.
STRINGER and WALLACE, JJ., Concur.