976 So.2d 1125 (2007)
Danny Ray JACKSON, Appellant,
v.
Leonard J. MORILLO, M.D., et al., Appellees.
No. 5D06-1117.
District Court of Appeal of Florida, Fifth District.
December 7, 2007.
*1126 J. Scott Murphy of Allen & Murphy, P.A., Maitland, for Appellant.
Michael S. Kast and Scott A. Tacktill of The Unger Law Group, P.L., Orlando, for Appellees.
PER CURIAM.
Danny Jackson appeals a final summary judgment rendered in this medical malpractice negligence lawsuit in favor of the appellees, Leonard J. Morillo, M.D., Leonard J. Morillo, M.D., P.A., and Doctors Surgery Center Partnership d/b/a Doctors Surgery Center, Inc. The trial court determined that Jackson had failed to conduct a proper pre-suit investigation as required by section 766.203, Florida Statutes (2003), because there was no corroboration of reasonable grounds to support the claim of Dr. Morillo's medical negligence. This conclusion is based on the fact that the corroborating affidavit does not mention Leonard Morillo, M.D., by name or otherwise. The trial court further concluded that as a matter of law, Dr. Morillo did not owe Jackson a duty of care. We reverse.
Jackson was working construction on 7 December 2000, when a foreign object entered his left eye. The next day he saw a family medical practice doctor who diagnosed a corneal abrasion, prescribed medication and an eye patch, and told him to return within twenty-four hours. A day later, Jackson went to St. Cloud Hospital with a complaint of extreme pain in his left eye and progressive visual blurring. Dr. Garrison, the emergency room physician, consulted by telephone with Dr. Morillo to discuss Jackson's care and treatment and, diagnosing a corneal ulcer, discharged him with instructions to follow up with Dr. Lugo, a corneal specialist, the following Monday. That Monday, 11 December, Jackson went to Magruder Eye Institute, which referred him two days later to a corneal specialist at Florida Eye Clinic, P.A. where he received treatment for several days until a doctor contacted Shands Hospital in Gainesville and advised Jackson to go there the same day. On 20 December, Shands admitted Jackson. Due to worsening pain, Jackson underwent a surgical procedure on 25 December to excise inflammatory membrane of his eye. An intraocular culture tested positive for fusarium, a fungus. Jackson's condition worsened and eventually required enucleation of his entire left eye.
Jackson's lawsuit alleged that Dr. Morillo, by and through Dr. Garrison's telephone call, failed to properly and personally evaluate, examine, and diagnose Jackson's condition and appropriately treat his infected cornea ulcer, which allowed the condition to progressively worsen to the point that Jackson lost his left eye. In addition, Dr. Morillo allegedly failed to properly advise Dr. Garrison that Jackson needed immediate hospitalization for an extremely dangerous condition that required a corneal specialist's immediate examination and treatment. Dr. Morillo challenged the complaint based on the failure of Jackson's corroborating affidavit to name him as chapter 766 required.
Dr. Lee's pre-suit affidavit stated that he was familiar with Jackson's medical complaint and had reviewed the medical records, including those from B.V.L. Family Medical Center, Orlando Regional Healthcare System, Inc., Magruder Eye *1127 Institute, Florida Eye Clinic, and Shands Hospital. The affidavit did not reference Dr. Morillo, his P.A., or Doctors Surgery Center. At the conclusion of the pre-suit screening period, Dr. Morillo denied the claim and attached an affidavit by Dr. Johnson that concluded Dr. Morillo did not commit malpractice because, when consulted by telephone, he evaluated the information in a non-negligent manner, suggested appropriate medications, and properly advised that the patient be referred to a corneal specialist. Dr. Johnson also concurred in the opinion that Jackson did not require hospitalization.
Dr. Morillo's motion for summary judgment asserted that Jackson failed to comply with the pre-suit investigation requirements of section 766.203 and that he had no legal duty because he was not Jackson's healthcare provider. The supporting affidavits by Drs. Garrison and Morillo evidence that while Jackson was a patient at the St. Cloud Hospital emergency room, Dr. Garrison telephoned Dr. Morillo to ask for professional advice concerning Jackson's situation. Dr. Garrison felt that the patient's history and his examination findings warranted a consultation with an ophthalmologist. Dr. Morillo was listed on a consultation directory available to emergency room physicians. Ophthalmologic physicians were also available on-call through Orlando Regional Medical Center. Dr. Morillo received calls from emergency rooms and, if he was available, he would take the phone call or accept the patient for transfer to his office. If he did not accept the patient, he told the emergency department personnel what he would do in that circumstance. Although he did not bill for these services, he undertook to fulfill them voluntarily.
Dr. Morillo never consulted with Jackson and specifically told Dr. Garrison that he was not accepting Jackson as a patient. Dr. Morillo thought that Jackson was suffering from a vision-threatening corneal infection and required a corneal specialist; however, he incorrectly believed that hospitalization would not help and was unnecessary. He suggested that Dr. Garrison refer him to Dr. Lugo, a corneal specialist. Dr. Garrison could have arranged for an immediate evaluation by a corneal specialist, but, based on Dr. Morillo's opinion, he did not feel that was necessary. Relying on Dr. Morillo's advice in rendering care and treatment to Jackson, he prescribed Ciloxan, Cyclogel, and Gentamycin.
The court granted summary judgment on the lack of adequate pre-suit notice and lack of a legal duty. It explained:
[T]he real question is: Did Dr. Morillo undertake to treat and care for this patient? Can we extend the doctrine to situations where doctors are talking among themselves, never seeing a patient, never undertaking the care and treatment of the patient. In fact, specifically renouncing that he's undertaking the care and treatment of the patient, as I understand it, saying that he wasn't [ ] qualified to take this up and told him what he would do, if he undertook the care and treatment, if someone walked into his office under that circumstance. I don't think the doctrine [Pate[1]] should be extended that far. [] But it seems that the doctrine in Pate is being restricted, rather than extended.
The court described Dr. Lee's affidavit's failure to meet pre-suit requirements as critical because it did not reference Dr. Morillo's phone participation.
The appellant contends that the notice of intent served on Dr. Morillo advised him that his care and treatment of Jackson was at issue, as corroborated by Dr. Lee's affidavit, and fully complied with the spirit *1128 and specific provisions of section 766.203. Dr. Morillo counters that the trial court properly granted final summary judgment because Dr. Lee's affidavit did not corroborate any negligence by Dr. Morillo and failed to name him despite section 766.202(5)'s requirement that an attorney review the case against "each and every potential defendant" and consult with a medical expert to obtain the expert's written opinion. We note, however, that Dr. Morillo does not assert that the notice of intent served on him by the appellant was inadequate. In fact, Dr. Morillo responded to the notice of intent and ultimately denied the claim. Rather, Dr. Morillo focuses only on the adequacy of the affidavit.
Appellate courts review de novo a summary judgment order. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Construing all facts and inferences in favor of the nonmoving party, Lawrence v. Pep Boys Manny Moe & Jack, Inc., 842 So.2d 303, 305 (Fla. 5th DCA 2003), summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Aberdeen, 760 So.2d at 130.
Section 766.202(5) provides that "`[i]nvestigation' means that an attorney has reviewed the case against each and every potential defendant and has consulted with a medical expert and has obtained a written opinion from said expert." If the court finds the claimant's notice of intent to initiate litigation is not in compliance with the reasonable investigation requirements of sections 766.201-.212, the court may dismiss the claim. Kukral v. Mekras, 679 So.2d 278, 281 (Fla.1996). However, the medical malpractice statutory scheme must be interpreted liberally so as not to unduly restrict a Florida citizen's constitutionally guaranteed access to the courts, while at the same time carrying out the legislative policy of screening out frivolous lawsuits and defenses. Id. at 284.
The purpose of the medical malpractice pre-suit screening statute is to prevent the filing of medical malpractice claims that are not legitimate. Columbia/JFK Med. Ctr. Ltd. P'ship v. Brown, 805 So.2d 28, 29 (Fla. 4th DCA 2001). The statute's pre-suit screening requirements are broadly construed to favor access to the courts and do not require that the corroborating expert's affidavit give notice of every possible instance of medical negligence. Davis v. Orlando Reg'l Med. Ctr., 654 So.2d 664, 665 (Fla. 5th DCA 1995). Hence, pre-suit notice to a hospital of medical malpractice that occurred during surgery is adequate to survive a pre-suit notice challenge to a claim against the hospital for post-operative medical malpractice because the purpose of the expert corroborative opinion is to prevent the filing of baseless litigation and not to set forth every possible instance of medical negligence. Id. Davis is similar to Columbia/JFK Medical Center, 805 So.2d at 29, where the court held that the statute's purpose is met when one theory of post-operative negligence is alleged in the pre-suit notice against a hospital and another claim is made in the lawsuit against the hospital for its negligence in allowing staff privileges to the physician who performed the surgery.
In Mirza v. Trombley, 946 So.2d 1096 (Fla. 5th DCA 2006) we held that the statute was satisfied when the plaintiffs conducted the required investigation, resulting in an expert medical opinion that they had a legitimate basis to pursue a malpractice claim. Id. at 1101. The statute's plain language, the purpose of the statutory requirement, and the rule requiring that the malpractice presuit requirements be construed in a manner that protects citizens' constitutionally guaranteed *1129 access to the courts support our decision to reject a narrow construction of section 766.203 that would compel plaintiffs to individually name each future defendant in the investigatory affidavit. Id. at 1100. The statutory purpose behind the affidavit requirement is the elimination of frivolous claims. Id.
Here, Dr. Lee's affidavit demonstrated that he examined all of Jackson's medical records from his treatment at a family medical center, St. Cloud Hospital, eye clinics, and Shands Hospital, and his statement corroborated reasonable grounds to support the claim of medical negligence. The affidavit satisfied the purpose of the pre-suit notice statute to corroborate that the claim is legitimate and to demonstrate that a proper review determined the defendants' actions were negligent.
We also reject the trial court's conclusion that as a matter of law Dr. Morillo owed no legal duty to Jackson. Relying on Pate, 661 So.2d 278, the trial court gave a restrictive interpretation to the requirement that a physician-patient relationship required privity. We hold that there is at least a factual question not presently amenable to summary judgment whether Dr. Morillo owed a duty of care to the plaintiff.
Accordingly, we REVERSE the summary final judgment and REMAND for further proceedings.
REVERSED and REMANDED.
GRIFFIN and MONACO, JJ., concur.
THOMPSON, J., dissenting with opinion.
THOMPSON, J., dissenting.
I respectfully dissent for two reasons. First, Danny Ray Jackson failed to comply with section 766.203, Florida Statutes (2003). This statute requires a proper pre-suit investigation and corroboration of reasonable grounds to support a claim of negligence against "any named defendant." Dr. Lee's pre-suit corroborating affidavit does not name Dr. Morillo or his practice. Dr. Lee's affidavit also does not support the claim by stating how Dr. Morillo's advice was medically negligent in Jackson's treatment. This contrasts with Dr. Lee's detailed affidavit concerning the investigation of negligence by BVL Family Medical Center, Orlando Regional Healthcare System, Inc., Magruder Eye Institute Florida, Florida Eye Clinic, and Shands Hospital. Dr. Lee's only statement that could be considered an opinion on Dr. Morillo refers to him as one of the other defendants who "deviated from acceptable standards of care by failing to appropriately treat and diagnose a corneal abrasion also allowing the condition to progressively worsen, causing it to become infected which went untreated and later mistreated to the point that Mr. Jackson was forced to undergo the removal of his left eye." In my opinion, this does not comply with the language of the statute. The trial court's decision to grant the summary judgment is supported by court rulings in Bonati v. Allen, 911 So.2d 285 (Fla. 2d DCA 2005), and Mirza v. Trombley, 946 So.2d 1096 (Fla. 5th DCA 2006).
In Bonati 911 So.2d 285, where the affidavit made no mention or allegation that Dr. Bonati was negligent in recommending certain procedures, the Second District held that the affidavit failed to corroborate that Dr. Bonati's negligence toward the plaintiff and did not satisfy presuit notice requirements.
In Mirza, 946 So.2d 1096, this court approved the denial of a dismissal or summary judgment for Dr. Mirza when he was not named specifically in the pre-suit notice or the corroborating affidavit. The affidavit described Dr. Mirza's treatment, which allegedly fell below the appropriate standard of care, but named only six other providers. Despite the affidavit's failure *1130 to specifically name Dr. Mirza, this court described the failure to name him as but one fact that demonstrated that no reasonable investigation had been conducted. However, because the affidavit clearly showed that a reasonable investigation had been conducted with respect to Dr. Mirza's actions, his dismissal was unwarranted. We reasoned in Mirza that section 766.203 did not require that each future defendant be individually named in the investigatory affidavit as a prerequisite to suit and such a requirement would seem inconsistent with the recognized purpose underlying the affidavit requirement. Id. We held that "failure to individually name a particular defendant is not fatally defective, so long as the affidavit otherwise makes it clear that the defendant's actions were properly reviewed and determined to be negligent prior to filing suit." Id. at 1100. Even if a defendant's identity is unknown, the affidavit corroborates that the claim is legitimate if it describes the negligence. Kukral v. Mekras, 679 So.2d 278, 282 (Fla. 1996). In contrast, the affidavit in this case is devoid of any statement of Dr. Morillo's negligent actions.
The second reason I would affirm the trial court's ruling is that Dr. Morillo did not owe Jackson any duty of care. Whether a duty exists is a question of law for the trial court to decide. Goldberg v. Fla. Power & Light Co., 899 So.2d 1105, 1110 (Fla.2005). Dr. Morillo was not on call at the hospital, never billed for the telephone call, never saw Jackson in his office, and never saw him in the hospital. In fact, Dr. Morillo's unrebutted testimony is that he informed Dr. Garrison that he would not accept Jackson as a patient. The record shows that he told Dr. Garrison that Jackson needed to see a corneal specialist because the symptoms were beyond his specialty, and he specifically recommended Dr. Lugo.
No factual allegation establishes any physician-patient relationship to base a medical negligence claim against Dr. Morillo. See Vause v. Bay Med. Ctr., 687 So.2d 258, 263-64 (Fla. 1st DCA 1996). Generally, courts have held that in order to maintain a cause of action against a physician, privity must exist between the plaintiff and the physician. Pate v. Threlkel, 661 So.2d 278, 281 (Fla.1995). Here there was no privity.
For these reasons, I would affirm the trial court's order granting summary judgment. Summary judgment was proper because there was no genuine issue of material fact and Dr. Morillo was entitled to judgment as a matter of law. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla.2000).
NOTES
[1] Pate v. Threlkel, 661 So.2d 278 (Fla.1995).