# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2024-3379
LT Case No. 2021-CA-003505

_____

DAVID SCOTT WELLS, and NORTH
FLORIDA OBGYN, LLC d/b/a
Women's Care Florida,

    Appellants,

    v.

RODRIGO QUINTERO,
Individually and as Personal
Representative of the Estate of
Iris Quintero, RODRIGO
QUINTERO AND D.E.Q., a Child,
by and through his Parent and
natural Guardian Rodrigo
Quintero, and ST. VINCENT'S
MEDICAL CENTER, INC. d/b/a
Ascension St. Vincent's
Riverside Hospital,

    Appellees.

_____

Nonfinal appeal from the Circuit Court for Duval County.
Virginia Baker Norton, Judge.

Dinah S. Stein and Lindsey A. Hicks, of Hicks, Porter, Ebenfield
& Stein, P.A., Miami, and Mindy McLaughlin and Kaitlin
Rosenthal, of Beytin, McLaughlin, McLaughlin, Osborne,
Brumby, Hoffman & Mirelman, P.A., Tampa, for Appellants.

Bard D. Rockenbach and Adam Richardson, of Burlington & Rockenbach, P.A., West Palm Beach, and Jonathan R. Gdanski and David Silverman, of Schlesinger Law Offices, P.A., Fort Lauderdale, for Appellees, Rodrigo Quintero, Individually and as Personal Representative of the Estate of Iris Quintero, Rodrigo Quintero and D.E.Q., a Child, by and through his Parent and Natural Guardian Rodrigo Quintero.

January 23, 2026

SOUD, J.

Appellants David Wells, M.D. and North Florida OBGYN, LLC d/b/a Women's Care Florida, appeal the trial court's order denying their motion to dismiss three counts in this wrongful death medical malpractice action filed by Appellee Rodrigo Quintero. Concluding that Quintero failed to provide presuit notice regarding counts II, III, and IV as required by The Medical Malpractice Act, Chapter 766, Florida Statutes (2018), we reverse and remand to the trial court with instructions to grant the motion and for further proceedings consistent with this opinion.

I.

As personal representative of his late wife's estate and on behalf of himself and his minor child, Quintero filed a wrongful death medical malpractice action against Dr. Wells and North Florida OBGYN. In the operative third amended complaint, Quintero alleged that his wife Iris died as a result of the medical negligence of Dr. Wells, an obstetrician and gynecologist, in his treatment of her uterine tumor.

Prior to filing his initial complaint, Quintero served his Notice of Intent to Initiate Litigation for Medical Malpractice on Dr. Wells and his employer, North Florida OBGYN. The corroborating affidavit from out-of-state obstetrician and gynecologist Dr. Marcela del Carmen asserted that, during the course and scope of his employment with North Florida OBGYN and while working at

2

St. Vincent's Medical Center,[1] Dr. Wells was negligent in his treatment of Iris by failing to timely diagnose her, causing a delay in treatment, and negligently "[p]erforming a morcellation procedure which resulted in disease progression and worsening, metastasis and a recurrence of [Iris's] Leiomyosarcoma to other parts of her body, including, but not limited to her lungs, upper abdomen and Pelvis, resulting in her ultimate death." Importantly, Dr. del Carmen's presuit affidavit contains no opinions regarding any negligent acts by North Florida OBGYN.

Quintero filed his original complaint (amended two weeks later) asserting five causes of action against Dr. Wells, North Florida OBGYN, and St. Vincent's Medical Center. After North Florida OBGYN moved to dismiss, Quintero ultimately filed his third amended complaint,[2] alleging, as before, Negligence against Dr. Wells (Count I), Negligence against North Florida OBGYN (Count III), and Vicarious Liability against North Florida OBGYN for Dr. Wells's negligence (Count V). However, two new causes of action were asserted: Lack of Informed Consent against Dr. Wells (Count II) and against North Florida OBGYN (Count IV). Dr. Wells and North Florida OBGYN moved to dismiss counts II, III, and IV with prejudice, arguing, in part, that allegations of negligence by North Florida OBGYN's employees and/or agents in Count III were uncorroborated, because the expert's affidavit attached to Plaintiffs' presuit Notice of Intent only addressed clinical claims of medical negligence against Dr. Wells. They also argued counts II and IV should be dismissed because the informed consent claims were uncorroborated.

The trial court denied the motion and ordered Appellants to answer the operative complaint. This appeal followed.

II.

---

[1] Appellee St. Vincent's Medical Center did not join Dr. Wells's and North Florida OBGYN's motion to dismiss below and has not appeared in this appeal.

[2] No second amended complaint is presented in the record before us.

3

Dr. Wells and North Florida OBGYN urge this Court to exercise jurisdiction and reverse the trial court's order denying their motion to dismiss counts II, III, and IV. Succinctly stated, Appellants argue that Quintero did not comply with the requirements of the Medical Malpractice Act because he did not corroborate the claims raised in these counts with a corroborating affidavit from a qualified expert.

A.

Initially, we reject Appellants' suggestion that we have jurisdiction under Florida Rule of Appellate Procedure 9.130(a)(3), which provides for interlocutory review of nonfinal orders that "deny a motion to dismiss *on the basis of the qualifications* of a corroborating expert witness under subsections 766.102(5)–(9), and (12), Florida Statutes[.]" Fla. R. App. P. 9.130(a)(3)(H) (emphasis added). The referenced statutory provisions address the necessary qualifications of persons seeking to offer expert opinion concerning the prevailing professional standard of care in corroboration of claims of negligence as part of the presuit investigation process required of medical malpractice claims. *See* § 766.102(5)–(9), (12), Fla. Stat.

Here, this case does not turn on whether Dr. del Carmen was qualified to render certain opinions regarding alleged direct negligence of North Florida OBGYN or its other employees, or opinions pertaining to informed consent. Rather, Dr. Wells and North Florida OBGYN urged dismissal based on the absence altogether of any corroborating opinion supporting the claims raised in counts II, III, and IV. As a result, the plain language of Rule 9.130(a)(3)(H) does not vest us with interlocutory jurisdiction, as the rule is limited to denial of dismissal "on the basis of the qualifications of a corroborating expert witness." Fla. R. App. P. 9.130(a)(3)(H).

Yet, this does not end our jurisdictional inquiry. Dr. Wells and North Florida OBGYN alternatively request that we exercise our certiorari jurisdiction.

4

## B.

Certiorari is "an 'extraordinary remedy' . . . provid[ing] this Court 'the prerogative to reach down and halt a miscarriage of justice where no other remedy exists.'" *Adventist Health Sys./Sunbelt, Inc. v. Machalek*, 383 So. 3d 534, 536 (Fla. 5th DCA 2023) (quoting *Univ. of Fla. Bd. of Trs. v. Carmody*, 372 So. 3d 246, 251–52 (Fla. 2023)). The writ is more limited in scope than that of review on appeal and is not "intended to redress mere legal error . . . ." *Id.* at 537. And certiorari does not serve as an end around to facilitate interlocutory review of orders falling outside those provided by Rule 9.130. *See id.* (citing *Abbey v. Patrick*, 16 So. 3d 1051, 1053–54 (Fla. 1st DCA 2009)) ("[Certiorari] is not a remedy that can be used simply because the order in question is not appealable . . . .").

To warrant certiorari relief from the denial of their motions to dismiss, Dr. Wells and North Florida OBGYN must establish that in denying dismissal the trial court (1) departed from the essential requirements of the law, (2) resulting in material injury for the remainder of the case, (3) that cannot be corrected on post-judgment appeal. *See id.* at 537 (citing *Carmody,* 372 So. 3d at 252). The last two requirements are often combined into the concept of "irreparable harm." *Id.* "We must first consider the final two elements because irreparable harm is jurisdictional and must be found before we may decide whether there has been a departure from the essential requirements of the law." *Id.*

Because nonfinal orders subject to interlocutory review are limited to those set forth in Rule 9.130 of the Florida Rules of Appellate Procedure, certiorari generally is unavailable to review a trial court's denial of a motion to dismiss. *See id.* at 537 (citing *Carmody*, 372 So. 3d at 252). However, "Florida courts have created an 'exception . . . when the presuit requirements of a medical malpractice statute are at issue' since the 'purpose' of the Medical Malpractice Act is 'to avoid meritless claims and to encourage settlement for meritorious claims.'" *Id.* (quoting *Carmody*, 372 So. 3d at 252).

Thus, as the Florida Supreme Court reiterated in *Carmody*, certiorari lies "to ensure that the procedural aspects of the presuit requirements are met." *Id.* at 537–38 (quoting *Carmody*, 372 So.

3d at 253). For example, certiorari review is permitted to resolve "whether a plaintiff—before the filing of the medical malpractice lawsuit—gave the defendant 'advance notice' and provided an 'opportunity [for the defendant] to examine [the] claim.' Thus, a district court can grant certiorari review **to verify that the plaintiff submitted the corroborating affidavit** of an expert witness." *Id.* (quoting *Carmody*, 372 So. 3d at 253); *see also Shands Jacksonville Med. Ctr., Inc. v. Pusha*, 254 So. 3d 1076, 1080 (Fla. 1st DCA 2018) ("When a petitioner seeks certiorari relief on grounds that a plaintiff has not complied with the presuit requirements of the Medical Malpractice Act, the latter two prongs of the certiorari standard are satisfied as '[t]he statutes requiring presuit notice and screening cannot be meaningfully enforced postjudgment because the purpose of the presuit screening is to avoid the filing of the lawsuit in the first instance.'" (quoting *St. Joseph's Hosp., Inc. v. Doe*, 208 So. 3d 1200, 1201–02 (Fla. 2d DCA 2017)). And if an appropriate corroborating affidavit has not been provided, "[c]ertiorari may be an appropriate remedy if the error is one that resulted in the **deprivation of the right to the process itself**." *Machalek*, 383 So. 3d at 538 (quoting *Abbey*, 16 So. 3d at 1054).

As a result, we have certiorari jurisdiction to review whether Quintero complied with the Medical Malpractice Act and provided to Dr. Wells and North Florida OBGYN the required presuit notification.

C.

The Medical Malpractice Act sets out numerous requirements a plaintiff must satisfy before filing a medical malpractice action. *See Carmody*, 372 So. 3d at 248. These requirements "address a legitimate legislative policy decision relating to medical malpractice and establish[] a process intended to promote the settlement of meritorious claims at an early stage without the necessity of a full adversarial proceeding." *Williams v. Campagnulo*, 588 So. 2d 982, 983 (Fla. 1991); *see also Largie v. Gregorian*, 913 So. 2d 635, 638 (Fla. 3d DCA 2005) (quoting *Williams*).

6

As a condition precedent to filing suit, the Act requires a potential plaintiff to conduct "a reasonable investigation[3] as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant." § 766.104(1), Fla. Stat. Prior to issuing notification of intent to initiate medical negligence litigation as required by 766.106, a claimant must "conduct an investigation to ascertain that there are reasonable grounds to believe that: (a) [a]ny named defendant in the litigation was negligent in the care or treatment of the claimant; and (b) [s]uch negligence resulted in injury to the claimant." § 766.203(2), Fla. Stat. "Corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert[4] opinion . . . , at the time the notice of intent to initiate litigation is mailed, which statement shall corroborate reasonable grounds to support the claim of medical negligence." *Id*. And as the plain language of the Act requires, this information must be provided to each named defendant. *See* §§ 766.202(5) and 203(2), Fla. Stat.

The purpose of the presuit investigation notice with corroborating affidavit is not to simply give notice to a named defendant of an impending medical malpractice suit; rather, "[t]he purpose of the medical expert opinion is to 'assure the defendants, and the court, that a medical expert has determined that there is justification for the plaintiff's claim . . . to corroborate that the claim is legitimate.'" *Tomas v. Sandler*, 406 So. 3d 1089, 1093 (Fla. 3d DCA 2025) (quoting *Rell v. McCulla*, 101 So. 3d 878, 881 (Fla.

---

[3] The Act defines "investigation" to mean "that an attorney has reviewed the case *against each and every potential defendant* and has consulted with a medical expert and has obtained a written opinion from said expert." § 766.202(5), Fla. Stat. (emphasis added).

[4] "'Medical expert' means a person duly and regularly engaged in the practice of his or her profession who holds a health care professional degree from a university or college and who meets the requirements of an expert witness as set forth in s. 766.102." § 766.202(6), Fla. Stat.

2d DCA 2012)); *see also Wolfsen v. Applegate,* 619 So. 2d 1050, 1054–55 (Fla. 1st DCA 1993) (stating that a corroborating affidavit is required by the statute "to ensure that a claim or denial has been preceded by a reasonable investigation, and that it rests on a reasonable basis—i.e., to eliminate *frivolous* claims and defenses." (internal quotation marks and citations omitted)). Together, the notice of intent to initiate litigation and the corroborating affidavit, "must sufficiently indicate the manner in which the defendant . . . allegedly deviated from the standard of care, and must provide adequate information for the defendants to evaluate the merits of the claim." *Tomas*, 406 So. 3d at 1093–94 (internal quotation marks and citation omitted).

On certiorari review, we do not consider the sufficiency of the substantive evidence presented by an affidavit. *See Carmody*, 372 So. 3d at 254. Rather, our gaze remains focused on "process-related deficienc[ies]." *Id*. And that is precisely that nature of the procedural defect before us. The entirety of Dr. del Carmen's affidavit addresses only the claimed clinical negligence of Dr. Wells in his treatment of Iris. The affidavit contains no opinion whatsoever as to any negligence by North Florida OBGYN or its medical support staff. As such, North Florida OBGYN as a named defendant received no advance notice of the impending litigation concerning its alleged negligence and was thereby deprived of the statutorily granted ability to investigate the claim(s) and resolve any meritorious claim without the need for adversarial litigation. As a result, dismissal of count III should have been granted. *See Rafferty v. Martin Mem'l Med. Ctr., Inc.*, 335 So. 3d 144 (Fla. 4th DCA 2022) (affirming dismissal of medical negligence complaint against a hospital and nursing staff where the presuit corroborating affidavit identified reasonable grounds to initiate malpractice suit against a midwife but failed to identify "any deficiencies in the care provided by the hospital and its nursing staff"); *see also Largie*, 913 So. 2d at 642 (affirming summary judgment in favor of a nurse "based on the total failure of the [plaintiffs] to demonstrate that, as to this defendant, the presuit investigation requirements of Chapter 766 had been satisfied").

Likewise, Quintero's allegations claiming lack of informed consent are not addressed in the corroborating affidavit regarding either Dr. Wells or North Florida OBGYN. As such, the affidavit

failed to "sufficiently indicate the manner in which [Dr. Wells and/or North Florida OBGYN] . . . allegedly deviated from the standard of care" in that regard. *See Tomas*, 406 So. 3d at 1093–94. As a result, neither Dr. Wells nor North Florida OBGYN were afforded the opportunity to receive "adequate information for [them] to evaluate the merits of the claim." *See id*. Therefore, counts II and IV should have been dismissed.

## III.

As Quintero failed to provide presuit notice to Dr. Wells and North Florida OBGYN as required by the Medical Malpractice Act regarding causes of action asserted in counts II, III, and IV of the third amended complaint, we REVERSE the trial court's order denying the motion to dismiss those counts and REMAND the case for further proceedings not inconsistent with this opinion.

It is so ordered.

WALLIS and KILBANE, JJ., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————