IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

TUYUANA L. MORRIS, as
Personal Representative of the
Estate of SHUNTERIA S.
MCINTYRE, deceased,

      Appellant,

v.

ORLANDO S. MUNIZ, M.D.,
MARIANNA OB/GYN
ASSOCIATES, INC., JACKSON
HOSPITAL, BAY HOSPITAL,
INC., d/b/a GULF  COAST
MEDICAL CENTER, and
STEPHEN G. SMITH, M.D.,

      Appellees.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-3987

_____/

Opinion filed April 27, 2016.

An appeal from the Circuit Court for Jackson County.
Christopher N. Patterson, Judge.

John S. Mills, Courtney Brewer, and Andrew D. Manko of the Mills Firm, P.A.,
Tallahassee, for Appellant.

Michael J. Thomas and Kara R. Ottervanger, Pennington, P.A., Tallahassee, for
Appellee Orlando S. Muniz, M.D. and Marianna OB/GYN Associates, Inc.; Carrie
M. Roane of Guilday, Schwartz, Simpson, West, Hatch & Lowe, P.A., Tallahassee,
for Appellee Jackson Hospital; Christine Davis Graves and Jessica Zaiger Wallace
of Carlton Fields Jorden Burt, P.A., Tallahassee for Appellee Bay Hospital, Inc.,
d/b/a Gulf Coast Medical Center; Clifford C. Higby and Kevin Barr of Bryant &
Higby, Chartered, Panama City, for Appellee Stephen G. Smith, M.D.

WINOKUR, J.

The trial court dismissed appellant's wrongful death complaint for failure to satisfy statutory presuit requirements for medical malpractice actions. In granting appellees' motion to dismiss, the trial court found that appellant failed to provide reasonable access to information during presuit investigation pursuant to section 766.205(2), Florida Statutes (2011), and that, based on this failure, the record did not support a finding that her medical expert was qualified under sections 766.102(5)(a)2., (6) and (9), Florida Statutes (2011). We find that the record supports the trial court's dismissal and affirm.

Chapter 766 sets forth the statutory scheme for medical malpractice actions, including requirements for presuit investigation. See Baptist Med. Ctr. of Beaches, Inc. v. Rhodin, 40 So. 3d 112, 114 (Fla. 1st DCA 2010) ("[C]hapter 766 requires a potential plaintiff to perform an investigation of the merits of the claim and prepare a notice of intent to litigate before filing suit."); Shands Teaching Hosp. & Clinics, Inc. v. Barber, 638 So. 2d 570, 572 (Fla. 1st DCA 1994) ("The purpose of a notice of intent to sue is to give the defendant notice of the incident in order to allow investigation of the matter and promote presuit settlement of the claim; the expert corroborative opinion is designed to prevent the filing of baseless litigation."). Even so, "the medical malpractice statutory scheme must be interpreted liberally so as not to unduly restrict a Florida citizen's constitutionally guaranteed access to

2

courts." See Holden v. Bober, 39 So. 3d 396, 400 (Fla. 2d DCA 2010) (quoting Kukral v. Mekras, 679 So. 2d 278, 284 (Fla. 1996)); but see Largie v. Gregorian, 913 So. 2d 635, 638 (Fla. 3d DCA 2005) ("While the procedures set forth in Chapter 766 are not intended to deny access to the courts, they are 'more than mere technicalities.'") (quoting Correa v. Robertson, 693 So.2d 619, 621 (Fla. 2d DCA 1997)).

The presuit process requires a claimant to investigate whether the defendant was negligent in the care or treatment of the claimant and whether such negligence resulted in injury to the claimant. § 766.203(2), Fla. Stat. A medical expert must corroborate such findings in a verified written opinion. Id. The expert must meet the qualifications set forth in sections 766.202(6) and 766.102(5).[1] The presuit medical expert opinion is subject to discovery. § 766.203(4), Fla. Stat.

Failure to provide reasonable access to information during presuit "shall be grounds for dismissal of any applicable claim or defense ultimately asserted." § 766.205(2), Florida Statutes. Likewise, section 766.206(2) requires dismissal of the claim where the court finds that the notice of intent does not contain a verified written medical expert opinion by an expert witness as defined under section

---

[1] Subsection (5) of section 766.102 addresses the qualifications for an expert concerning the professional standard of care for physicians, osteopathic physicians, podiatric physicians, optometrists, dentists, chiropractic physicians, and pharmacists. Subsections (6) through (9) address the requirements for experts in other medical professions.

766.202, Florida Statutes. Dismissal for failure to comply with Chapter 766 presuit notice requirements "is an extraordinary sanction justified only in extreme situations." See DeCristo v. Columbia Hosp. Palm Beaches, Ltd., 896 So. 2d 909, 911 (Fla. 4th DCA 2005); see also De La Torre v. Orta, 785 So. 2d 553, 555 (Fla. 3d DCA 2001) ("It is well recognized in Florida law that dismissal of claims or defenses is an extreme sanction which should be used sparingly."); Wolford v. Boone, 874 So. 2d 1207, 1210 (Fla. 5th DCA 2004) ("[T]he striking of pleadings or dismissal of a case should be reserved for the most contumacious behavior."). A court's determination of the sanction to impose depends both on the circumstances of the case and what, if any, prejudice the opposing party has suffered. Robinson v. Scott, 974 So. 2d 1090, 1093 (Fla. 3d DCA 2007) (holding that a physician was not prejudiced by plaintiff's failure to provide presuit discovery as the record did not show that failure to provide presuit discovery prevented physician from investigating the claim).

Appellant in this case repeatedly ignored requests for presuit discovery regarding her presuit expert's statutory qualifications. Despite the parties agreeing to extend the ninety-day presuit period and appellees sending several letters to appellant expressing their concerns regarding the expert's qualifications, appellant filed the medical negligence action without sufficiently responding to appellees' requests for information. Even after the trial judge imposed sanctions, appellant

4

continued to obstruct the presuit process by failing to timely respond to the subpoena duces tecum concerning her expert's background and opinions and by failing to comply with the court's limited discovery order. The court held that because appellant declined to engage in a reasonable presuit investigation of the claim, the record did not support a finding that the expert was qualified under the statute. It further held that appellant's actions were intended to deprive appellees of the opportunity to meaningfully participate in presuit discovery of the medical negligence claims against them. We agree.

The Legislature has made it clear that the special qualifications required for presuit medical experts are essential to the Chapter 766 presuit investigation process.[2] Likewise, courts have consistently noted the significance of the presuit expert requirements in determining a claim's legitimacy. See Columbia/JFK Med. Ctr. Ltd. P'ship v. Brown, 805 So. 2d 28, 29 (Fla. 4th DCA 2001) ("[T]he purpose of the presuit notice and the requirement of an expert's affidavit to corroborate the claim is . . . to demonstrate that the claim is legitimate."); Largie, 913 So. 2d at 639

---

[2] The statutes setting out the special qualifications of these experts have been consistently refined, most recently in 2003, 2011, and 2013. See Ch. 2013–108, § 2, at 1466, Laws of Fla. (revising and narrowing qualifications for health care providers giving expert testimony on the prevailing professional standard); Ch. 2011–233, § 10, at 3474, Laws of Fla. (requiring that a  health care provider who provides expert testimony hold an "active" and valid license and "conducts a complete review  of the pertinent medical records"); Ch. 2003–416, § 48, at 4086, Laws of Fla. (revising requirements for health care providers providing expert testimony in medical negligence actions and requiring certification that an expert witness not previously have been found guilty of fraud or perjury).

("Requiring a written expert opinion as part of the presuit investigation assures the defendant that the claim was preceded by a reasonable investigation; 'that there is justification for the Plaintiffs' claim[.]'") (quoting Kukral, 679 So. 2d at 282); Wolfsen v. Applegate, 619 So. 2d 1050, 1054-55 (Fla. 1st DCA 1993) (stating that the purpose of reviewing a corroborating affidavit is "to ensure that a claim or denial has been preceded by a 'reasonable investigation,' and that it 'rests on a reasonable basis'"). Here, the record contains ample evidence to support the trial court's conclusions that appellant failed to offer sufficient proof of her proffered expert's statutory qualifications, and that appellant's lack of cooperation with appellees' attempts to verify the expert's qualifications merited dismissal under sections 766.205(2) and 766.206(2), Florida Statutes. Because the court did not abuse its discretion in dismissing the medical malpractice claim, we affirm.

LEWIS, J., CONCURS; SWANSON, J., DISSENTS WITH OPINION.

SWANSON, J., dissenting.

I respectfully dissent. Appellant brought this medical malpractice action alleging that appellees' negligence resulted in the death of appellant's daughter three days after she gave birth to a stillborn child. Appellant complied with the statutory presuit requirements by obtaining written corroboration from a qualified medical expert, Dr. Margaret Thompson. Because Dr. Thompson's affidavit clearly established her qualifications, that should have been the end of the matter. Instead, appellees filed a motion to dismiss appellant's complaint and used court-ordered limited discovery to go on a fishing expedition in an attempt to impeach Dr. Thompson's qualifications. After appellant's counsel refused to cooperate in this endeavor, the trial court dismissed appellant's wrongful death action, depriving appellant of her constitutionally guaranteed access to the courts.

Before filing a medical negligence action, a claimant is required to conduct a presuit investigation to determine that "there are reasonable grounds to believe that . . . [a]ny named defendant in the litigation was negligent in the care or treatment of the claimant" and "[s]uch negligence resulted in injury to the claimant." § 766.203(2), Fla. Stat. (2011). Corroboration of those findings by a medical expert must be obtained in writing. Id. A medical expert is defined as "a person duly and regularly engaged in the practice of his or her profession who holds a health care professional degree from a university or college and who meets the requirements

7

of an expert witness as set forth in s. 766.102." § 766.202(6), Fla. Stat. (2011).

Specifically, section 766.102, Florida Statutes (2011), provides:

> (5) A person may not give expert testimony concerning the prevailing professional standard of care unless the person is a health care provider who holds an active and valid license and conducts a complete review of the pertinent medical records and meets the following criteria:
> (a) If the health care provider against whom or on whose behalf the testimony is offered is a specialist, the expert witness must:
> 1. Specialize in the same specialty as the health care provider against whom or on whose behalf the testimony is offered; or specialize in a similar specialty that includes the evaluation, diagnosis, or treatment of the medical condition that is the subject of the claim and have prior experience treating similar patients; and
> 2. Have devoted professional time during the 3 years immediately preceding the date of the occurrence that is the basis for the action to:
> a. The active clinical practice of, or consulting with respect to, the same or similar specialty that includes the evaluation, diagnosis, or treatment of the medical condition that is the subject of the claim and have prior experience treating similar patients;
> b. Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same or similar specialty; or
> c. A clinical research program that is affiliated with an accredited health professional school or accredited residency or clinical research program in the same or similar specialty.

Corroboration from a qualified medical expert serves to prevent the filing of baseless medical malpractice litigation. Shands Teaching Hosp. & Clinics, Inc., v. Barber, 638 So.2d 570, 572 (Fla. 1st DCA 1994). As noted by our supreme court,

8

this statutory scheme "must be interpreted liberally so as not to unduly restrict a Florida citizen's constitutionally guaranteed access to the courts, while at the same time carrying out the legislative policy of screening out frivolous lawsuits and defenses." Kukral v. Mekras, 679 So. 2d 278, 284 (Fla. 1996).

Dr. Thompson's affidavit on its face clearly established that she met all of the statutory requirements. Specifically, her affidavit and curriculum vitae detailed her education, experience, and professional awards and plainly demonstrated that she was a board-certified obstetrician/gynecologist (OB/GYN) for thirty years and had been engaged in full-time patient care prior to her retirement in March 2008, nine months before the decedent's death. Moreover, they demonstrated that she had served in several roles requiring her to supervise OB/GYN nurses and other medical staff at a hospital and to be familiar with the relevant standards of care. Despite this, the trial court allowed appellees to depose Dr. Thompson regarding her qualifications. During her deposition, Dr. Thompson stated that she worked more than fifty hours per week as an OB/GYN in 2006 through March 2008 and explained how she managed to attend both graduate and law school during the same period. Although the trial court questioned the "feasibility" of Dr. Thompson's statement that she was engaged in full-time patient care while pursuing her master's and law degrees, the trial court was not permitted to make credibility determinations concerning an otherwise unrebutted and facially

9

sufficient affidavit.  On a motion to dismiss challenging a plaintiff's compliance with the statutory presuit requirements in a medical malpractice action, this court applies the de novo standard of review and must consider all factual allegations in a light most favorable to the plaintiff.  Oliveros v. Adventist Health Sys./Sunbelt, Inc., 45 So. 3d 873, 876-77 (Fla. 2d DCA 2010); Holden v. Bober, 39 So. 3d 396, 400 (Fla. 2d DCA 2010).  Because the trial court did not apply the correct principles in determining that Dr. Thompson was not a qualified medical expert, I would reverse the trial court's order dismissing appellant's wrongful death action.  See Apostolico v. Orlando Reg'l Health Care Sys., Inc., 871 So. 2d 283 (Fla. 5th DCA 2004).

To the extent the trial court found that appellant committed a violation of its order allowing limited discovery regarding Dr. Thompson's qualifications, it is questionable that appellees had a right to engage in such discovery, particularly where Dr. Thompson's qualifications were clearly established on the face of the affidavit.  See Plantz v. John, 170 So. 3d 822, 824 (Fla. 2d DCA 2015).  Even if such discovery was available, appellant's counsel was justified in objecting to appellees' misuse of the discovery process to go on a fishing expedition that exceeded what was relevant to determine Dr. Thompson's qualifications as a corroborating presuit expert witness.   Thus, the record fails to show, and the trial court's dismissal order fails to include the necessary findings under Kozel v.

10

<u>Ostendorf</u>, 629 So. 2d 817, 818 (Fla. 1993), that there was a violation of the trial court's discovery order warranting the extreme sanction of dismissal. Because the trial court misapplied the statutory presuit requirements so as to deprive appellant of her constitutional right of access to the courts, I would reverse and remand with directions that the trial court reinstate appellant's wrongful death action.